[Civ. No. 37630. Second Dist., Div. Three. Mar. 3, 1971.]

COUNTY OF SANTA BARBARA, Petitioner, v.
THE SUPERIOR COURT OF SANTA BARBARA COUNTY,
Respondent;
HEATHER ANGEL SINCLAIR et al., Real Parties in Interest.

## COUNSEL

George P. Kading, County Counsel, Griffith & Thornburgh, and Peter J. Samuelson for Petitioner.

No appearance for Respondent.

Price, Postel & Parma, Gary R. Ricks and C. Michael Cooney for Real Parties in Interest.

## OPINION

**FEINERMAN, J.***—Petitioner, the County of Santa Barbara, seeks to prohibit the respondent court from proceeding further with a wrongful

*Assigned by the Chairman of the Judicial Council.

death action brought by the real parties in interest, Heather Angel Sinclair, Anthony Sinclair and Barbara Joan Benson. Real parties in interest are the widow, adult son and adult daughter of Robert B. Sinclair, who was brutally murdered by Billy McCoy Hunter on January 3, 1970, a few hours after Hunter was released on bail from the Santa Barbara County jail. The county, relying upon the legal defense of sovereign immunity, had demurred to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action against it. The trial court overruled the demurrer.

As alleged in the complaint, the tragic facts which underlie the legal issues posed in this matter are as follows: On December 31, 1969, Billy McCoy Hunter was arrested and booked for drunk driving. Upon his arrest, he displayed erratic and violent behavior and used profane language. He was released on $425 bail at 5:30 a.m. on January 1, 1970. At 10:30 a.m., that same morning (January 1), he was rearrested and booked on charges of attempted burglary, assault with intent to commit rape, battery and public intoxication. Arresting officers reported that when confronted at the scene, Hunter was armed with a straight razor, was combative and used belligerent and abusive language. During booking it was necessary to use force upon Hunter to make him respond to orders. He was placed in solitary confinement. While thus confined, Hunter engaged in a number of destructive and violent acts including flooding his cell and destroying jail property, fighting with sheriff's deputies, including biting one deputy on the arm, throwing food out of his cell and bending his food tray.

After these events occurred, the deputies booked Hunter on the additional charges of battery on a police officer and destruction of jail property. It is alleged, however, that the deputies failed to advise the district attorney's office of the additional booking and failed to supply to the district attorney written reports of the actions of Hunter while in jail on the second arrest until after Hunter's release on bail. This release took place January 2, 1970, at 4:30 p.m., upon the posting, by a bail bondsman, of the bail fixed in the amount of $1,065. This was the bail previously set on January 1, 1970, on the complaint filed by the district attorney charging Hunter with two counts of battery (Pen. Code, § 242) and one count of resisting arrest (Pen. Code, § 148). After Hunter's release on bail, the sheriff did notify the district attorney of the new offenses committed in jail. Meantime, Hunter had entered the residence of Mr. Sinclair and stabbed him to death.

The gravamen of the complaint is an allegation that there are three "acts and omissions of negligence" on the part of the county which are not protected by government immunity, namely:

1. No information relevant to the violent criminal acts of Billy McCoy

Hunter committed while in jail were communicated to the office of the district attorney by the sheriff's office prior to releasing him on bail for previous crimes even though the sheriff had booked Hunter for the violent acts committed in jail.

2. The implementation of the decision to release Hunter was done negligently in that the sheriff's office accepted the statements and amount tendered for bail by the bailbondsman without question or examination when the sheriff knew or should have known that the bail was grossly inadequate and Hunter had been booked on charges for crimes committed while in jail for which bail had not been determined.

3. Despite very considerable evidence of overt psychotic behavior by Hunter while confined to jail, no effort was made, and no determination, for or against, was made to have Hunter psychiatrically evaluated or treated or detained for same.

In response, petitioner asserts that absolute immunity is afforded by Government Code sections 818.2,[1] 845,[2] and 846[3] and that it "was not in a position to warn any specific member of the general public" of the impending release of Hunter.

At the outset we are confronted with the question of whether the trial court's order overruling the demurrer can be reviewed by prohibition. An order overruling a demurrer is nonappealable, and ordinarily is to be reviewed upon appeal from the judgment entered after trial. By its demurrer, however, the county interposed its defense of sovereign immunity. In *People v. Superior Court,* 29 Cal.2d 754, 756 [178 P.2d 1, 40 A.L.R.2d 919], in which a similar procedural situation was presented, the court, in holding that prohibition was the proper remedy, stated: "The defense of sovereign immunity from suit presents a jurisdictional question [citations]. Prohibition may therefore be invoked under the conditions prescribed by section 1102 et seq., of the Code of Civil Procedure. Assuming that there would be a remedy by appeal in the pending action, the importance of the principal question is sufficient to support the present proceeding to the end that the issue speedily be determined. (*Rescue Army* v. *Municipal Court,* 28 Cal.2d 460, 467 [171 P.2d 8].) The fact that the peremptory writ may be denied

---

[1]Government Code section 818.2: "A public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law."

[2]Government Code section 845: "Neither a public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service."

[3]Government Code section 846: "Neither a public entity nor a public employee is liable for injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody."

in no way forecloses the court from exercising its constitutional and statu- tory power to entertain the proceeding." (See also, *County of Los Angeles* v. *Superior Court,* 62 Cal.2d 839 [44 Cal.Rptr. 796, 402 P.2d 868]; *Tide Water Assoc. Oil Co.* v. *Superior Court,* 43 Cal.2d 815, 820-821 [279 P.2d 35]; *State of California* v. *Superior Court,* 263 Cal.App.2d 396, 398 [69 Cal.Rptr. 683]; *Allen* v. *Superior Court,* 171 Cal.App.2d 444, 448 [340 P.2d 1030].)

In the light of the preceding authorities, it is our belief that the order overruling the demurrer in the case at bench properly can be reviewed by prohibition.

■ The liability of public entities, including a county (Gov. Code, § 811.2) is governed by the Government Code, sections 810 et seq. (California Tort Claims Act of 1963.) Section 815[4] provides: "Except as otherwise provided by statute: "(a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.

"(b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person."

Section 815.2 provides: "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

"(b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." (See §§ 820 and 820.2 with regard to the liability of public employees.)[5]

As a part of the comprehensive legislation dealing with governmental

_____

[4]All section references are to the Government Code unless otherwise specified.

[5]Section 820: "(a) Except as otherwise provided by statute (including Section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person.

"(b) The liability of a public employee established by this part (commencing with Section 814) is subject to any defenses that would be available to the public employee if he were a private person."

Section 820.2: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

liability, the general liability statutes previously cited are amplified in other chapters of the Tort Claims Act dealing with the liabilities and immunities of public entities and public employees in particular fields. Chapter 3 of the act (§§ 844-846) deals with "Police and Correctional Activities." At the time the events of this case transpired, section 845.8 provided as follows: "Neither a public entity nor a public employee is liable for:

"(a) Any injury resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke his parole or release.

"(b) Any injury caused by an escaping or escaped prisoner."[6]

Section 846 provides as follows: "Neither a public entity nor a public employee is liable for injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody."

In the following chapter of the Government Code, dealing with "Medical, Hospital And Public Health Activities," section 856 declares an immunity from liability for determining whether to confine a person for "mental illness." As the Law Revision Commission Comments to said section indicate, "The determination whether to confine or release a person who may be suffering from such a condition and the determination of the terms and conditions of his confinement necessarily involve a high degree of discretion."

It is our conclusion that the conduct complained of by real parties in interest comes within the immunities established by sections 845.8 and 846.[7] These acts are inherently a part of the processes involved in determining whether to release and do not involve any conduct subsequent to that determination.

The authorities relied upon by the real parties in interest are distinguishable. *Morgan v. County of Yuba,* 230 Cal.App.2d 938 [41 Cal.Rptr. 508], involved a wrongful death action against the County of Yuba. One Avel Ashby, having threatened the life of the decedent, was arrested at her instigation. The sheriff and deputies of defendant county, with knowledge of the threat, promised to warn her immediately in the event of Ashby's release on bail. This was not done and Ashby, on his release, killed the

---

[6]In Statutes 1970, chapter 1099, section 8, Government Code, section 845.8, subdivision (b) was amended to read as follows: "(b) Any injury caused by: (1) An escaping or escaped prisoner; (2) An escaping or escaped arrested person; or (3) A person resisting arrest."

[7]We believe that these two immunity sections (§§ 845.8 and 846) are not mutually exclusive and that they may overlap in a given case.

complaining witness. The county's demurrer was sustained without leave to amend. On appeal, the judgment of dismissal was reversed. The court held that under Government Code section 845.8, neither a public entity nor an employee is liable for injury resulting from a determination to release a prisoner; that this rule is within the general principle of immunity for discretionary acts set forth in section 820.2, and that if the negligence charged was the release of a dangerous prisoner, there would be no liability. (Pp. 941-942.) The negligence charged, however, was the failure to warn, as promised, that a dangerous prisoner was about to be released. The court concluded that no discretion is exercised in warning those whom one has promised to warn of the impending release of a dangerous prisoner; that, regardless of discretion to release or not, notification called for a simple ministerial act. (P. 942.)

In *Johnson* v. *State of California,* 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], the plaintiff sought damages against the State of California for personal injuries sustained as the result of the alleged negligence of the California Youth Authority in allowing a 16-year-old boy with homicidal tendencies, and a background of violence and cruelty towards both animals and humans, to be placed in her home without notice of such dangerous propensities, even though the state had notice of same. The court held that although the basic policy decision to parole is a discretionary act, subsequent ministerial actions in the implementation of that basic decision must face case-by-case adjudication on the question of negligence. The court concluded that the decision of a parole officer as to what warnings to give foster parents does not constitute the type of basic policy decision that the Government Code insulates from liability in section 820.2.

In this case, unlike the situation in *Johnson,* the acts we are concerned with involve policy decisions to be made prior to and as an integral part of the ultimate basic decision to release.[8] *Morgan* and *Johnson* are also distinguishable from the case at bench on the basis that Mr. Sinclair, the victim, was a member of the general public and not an individual known to the petitioner or its agents and capable of being warned either because the petitioner or its agents could or should have foreseen a danger or because a specific promise had been made to warn.

The general demurrer filed herein should have been sustained without leave to amend. The alternative writ heretofore issued is discharged. Let

---

[8]*McCorkle* v. *City of Los Angeles,* 70 Cal.2d 252 [74 Cal.Rptr. 389, 449 P.2d 453], and *Elton* v. *County of Orange,* 3 Cal.App.3d 1053 [84 Cal.Rptr. 27], which are relied upon by real parties in interest, are also factual situations involving subsequent ministerial acts implementing discretionary decisons and are readily distinguishable from the facts of this case.

a peremptory writ of prohibition issue prohibiting respondent court from proceeding as to petitioner.

Cobey, Acting P. J., and Schweitzer, J., concurred.

The petition of the real parties in interest for a hearing by the Supreme Court was denied April 29, 1971.