[Civ. No. 13352. Fourth Dist., Div. Two. Feb. 15, 1974.]

THE STATE OF CALIFORNIA, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
AMERICAN INDEMNITY COMPANY, Real Party in Interest.

**COUNSEL**

Evelle J. Younger, Attorney General, James R. Schwartz and Joseph M. O'Heron, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Shield & Smith and Peter Berwick for Real Party in Interest.

**OPINION**

**GABBERT, J.**—The State of California ("State"), as petitioner, seeks a writ of prohibition to restrain and enjoin respondent court from continuing to hear a negligence action brought by the real party in interest, American Indemnity Company ("American"). In support of its petition, the State notes that, under section 845.8, subdivision (a) of the Government Code,[1] its entities and employees are immune from liability for injuries which are inflicted upon the general public by released prisoners.

The instant petition for writ of prohibition is before us for a second time. When petitioner first sought this writ, we denied the petition. Thereafter, the California Supreme Court granted a hearing and issued an order transferring the proceeding to this court with instructions to issue an alternative writ of prohibition. We have done so, and we now reexamine the instant petition, as directed by the Supreme Court, in light of the recently decided case of *County of Sacramento* v. *Superior Court,* 8 Cal.3d 479 [105 Cal.Rptr. 374, 503 P.2d 1382].

---

[1] All references not otherwise designated are to the Government Code.

■ On February 13, 1973, American, the plaintiff below, filed a first amended complaint against the State and various of its agencies and employees. American alleged five separate causes of action for damages, all arising out of the arson of a building for which it (American) provided fire insurance. The arson assertedly was committed by prisoners released into the general population by the State of California's Don Lugo Community Center.

On March 2, 1973, the defendant State of California demurred. to American's complaint and specifically raised the defense of sovereign immunity. The State particularly relied upon section 845.8, subdivision (a), which reads: "Neither a public entity nor a public employee is liable for: (a) Any injury resulting from determining whether to . . . release a prisoner or from determining the terms and conditions of his . . . release or from determining whether to revoke his . . . release." The superior court, despite the above statute, overruled the State's demurrer as to four of the five causes of action.

Of the causes of action surviving the demurrer, all essentially allege "ministerial" negligence by the State in the implementation of its rehabilitative programs. The first cause of action, for instance, urges that the State was negligent in the *application* of rules and regulations of the Don Lugo facility, thus improperly permitting the two inmates (who committed the arson) to be released.[2] The second cause of action alleges that unnamed guards permitted the here relevant inmates to be released despite the fact these inmates were not eligible for release.[3] The remaining viable causes of action, which are worded similarly, charge that the State was negligent in enforcing prison regulations requiring, in certain circumstances, rev-

[2]First amended complaint, pp. 3-4, lines 24-32; 1-8: "The defendants . . . established certain regulations . . . these regulations . . . dictated when, and under what circumstances, Jerry Wade and William Cartright were to be allowed to leave the premises of the Don Lugo Community Center and enter into the surrounding community . . . defendants [who were] charged with the duties of administering the facility in accordance with the above mentioned regulations . . . negligently failed to comply with said regulations . . . and permitted Jerry Wade and William Cartright [inmates] to depart from the premises . . . ."

[3]*Ibid.*, pp. 5-6, lines 24-32; 1-11: "Defendants . . . established certain regulations . . . which dictated the times, dates and occasions when Jerry Wade and William Cartright would be permitted to leave . . . and enter into the surrounding community . . . [which regulations] required . . . [the] exercise [of] sufficient supervision so as to be able to account for the location of said individuals at all times . . . [B]ecause of the ministerial negligence of the defendants, . . . and in particular . . . guards, lower level employees of the State of California . . . Jerry Wade and William Cartright [were allowed] to be released from the premises of the Don Lugo Community Center at a time when said Wade and Cartright were not eligible for release . . . ."

ocation of the privilege (of inmates) to occasionally leave the Don Lugo facility.[4]

The principal argument of petitioner State of California is that the decision of the respondent superior court contravenes the legislative intent behind section 845.8, in that the decision will have a severe chilling effect on existing rehabilitative programs. Petitioner, in this regard, refers us to the Law Revision Commission comment to section 845.8. In pertinent part, that comment reads: "The extent of the freedom that must be accorded to prisoners for rehabilitative purposes and the nature of the precautions necessary to prevent escape of prisoners are matters that should be determined by the proper public officials unfettered by any fear that their decisions may result in liability."

Real party in interest, American, counters by arguing that section 845.8, subdivision (a), provides immunity only with respect to *discretionary* acts concerning "determinations" to release particular prisoners. American then argues that, in this case, the State's neglect lies not in the realm of discretion, but rather in the failure to perform the *ministerial* acts of applying already established rules and regulations.

Case law interpreting section 845.8 reveals that petitioner State of California has the sounder position. For purposes of imposing tort liability, courts of this state have been quite hesitant to view as ministerial particular decisions or acts involving prisoner rehabilitation. (*County of Sacramento* v. *Superior Court, supra,* 8 Cal.3d 479, 485; *County of Santa Barbara* v. *Superior Court,* 15 Cal.App.3d 751 [93 Cal.Rptr. 406]; also see *Hernandez* v. *State of California,* 11 Cal.App.3d 895, 899 [90 Cal.Rptr. 205] [releases from mental health facilities].) This hesitancy to classify decisions or acts as ministerial—i.e., liability inducing—derives from a policy judgment that prison personnel might otherwise be inhibited from maintaining innovative rehabilitation-release programs.

The case of *County of Sacramento* v. *Superior Court, supra,* 8 Cal.3d 479, is illustrative of the Supreme Court's unwillingness to create sharp (but essentially artificial) distinctions between ministerial and discretionary

---

[4]*Ibid.,* p. 8, lines 4-30; p. 9, lines 11-32: ". . . [D]efendants . . . established certain regulations . . . these regulations . . . provided that under specific circumstances, based on a prisoner's past criminal record and his misconduct . . . his privilege of leaving the center and entering the surrounding community was to be rescinded, revoked and/or suspended . . . [defendants] negligently failed to ministerially comply with said regulations . . . and permitted Jerry Wade [and William Cartright] to leave the Don Lugo Community Center. . . ."

acts. In that case, heirs of a decedent brought a wrongful death action against the county on the theory, *inter alia,* that the county's negligence had permitted prisoners to escape from jail, and thus to kill decedent during a burglary of decedent's home. The Supreme Court issued a writ of prohibition restraining the action, noting that absolute language in section 845.8, subdivision (b), provided immunity to the county for "[a]ny injury caused by . . . [a]n escaping or escaped prisoner." Moreover, on the ministerial-discretionary distinction, the Supreme Court noted: ". . . [R]eal parties in interest, although recognizing that there is immunity for discretionary acts of [the county's] employees . . . , contend that there is no immunity with respect to ministerial acts and that the alleged acts of [the county's] employees in leaving the jail doors unlocked were ministerial in nature. *Ministerial implementation of correctional programs, however, can hardly, in any consideration of the imposition of tort liability, be isolated from discretionary judgments made in adopting such programs.*" (P. 485, italics added.)

*Johnson* v. *State of California,* 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], cited by American in support of its allegation of governmental liability, is not apposite. *Johnson* involved a youth who was placed in a foster home (by the California Youth Authority) without that agency first informing the foster parents of the known dangerous propensities of the youth. When the foster parents were injured by their charge, they brought an action against the State asserting negligence by the State in failing to warn them of the youth's homicidal tendencies. The Supreme Court permitted this action. It explicitly denied the State's claim of immunity by virtue of section 845.8, subdivision (a), explaining: "But, although section 845.8 requires that each member of the general public who chances to come into contact with a parolee bear the risk that the rehabilitative effort will fail, nevertheless, well-intentioned foster parents, whose direct and continuous contact with the parolee drastically increases the dangers to them, need not go without a remedy. Once the proper authorities have made the basic policy decision—to place a youth with foster parents, for example—the role of section 845.8 immunity ends; subsequent negligent actions, such as the failure to give reasonable warnings to the foster parents actually selected, are subject to legal redress." (P. 799.)

The instant case, unlike *Johnson,* does not involve a situation where, after there has been an actual release, there is a *continuing relationship* between the State and some particular member of the public. Rather American stands with other general members of the public; it must bear the risk that rehabilitative efforts will fail.

From the above, it appears that all acts within the ambit of release pro-

cedures are immunized from tort liability. Since all of American's alleged causes of action clearly fall within that ambit, a writ of prohibition as prayed for is hereby granted.

Gardner, P. J., and Kaufman, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied April 10, 1974.