[Civ. No. 16225. Third Dist. Sept. 26, 1977.]

HARRY J. WHITCOMBE et al., Plaintiffs and Appellants, v.
COUNTY OF YOLO et al., Defendants and Respondents.

**COUNSEL**

Johnson, Greve, Clifford & Diepenbrock and Thomas N. Cooper for Plaintiffs and Appellants.

Memering, Stumbos, DeMers, Ford & Norris, Memering, Stumbos, DeMers & Ford, John J. Roman, Roberts & Buchman and Donald G. Buchman for Defendants and Respondents.

**OPINION**

**REYNOSO, J.**—In this case we deal with the extent of the freedom from liability the California Tort Claims Act accords public entities and public officials with regard to the administration of prisoner probation programs. We also confront two ancillary issues: (1) whether the existence of a "special relationship" serves to bypass a legislative grant of immunity; and (2) whether the breach of certain mandatory administrative duties gives rise to governmental liability.

Appellants Harry J. Whitcombe and Carlos Hernandez (hereinafter appellants) appeal from a judgment of dismissal after the trial court sustained defendants' demurrer to their amended complaint, based on a failure to state a cause of action. (Code Civ. Proc., § 430.10, subd. (e).)

■ On appeal, all intendments weigh in favor of the regularity of the trial court proceedings and the correctness of the judgment. Unless clear error or abuse of discretion is demonstrated, the judgment will be affirmed. (*Walling* v. *Kimball* (1941) 17 Cal.2d 364, 365 [110 P.2d 58]; *Banerian* v. *O'Malley* (1974) 42 Cal.App.3d 604, 610 [116 Cal.Rptr. 919].)

■ The function of a demurrer is to test the sufficiency of appellants' pleading by raising questions of law. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 796, at p. 2409.) As such, the question before us is whether the trial court erred when it found that appellants failed to state a cause of action. We hold it did not.

Appellants' complaint alleges facts as follows: In September 1973, Daniel Gibson pled guilty to a charge of first degree robbery. Because of the bizarre factual circumstances surrounding the offense,[1] he was ordered to undergo psychiatric evaluation prior to sentencing. A team of three psychiatrists reported to the court and the Yolo County Probation

---

[1]According to appellants' complaint, the robbery occurred as a result of Gibson's pet dog being hit and killed by a passing automobile. Apparently unable to control himself, Gibson surreptitiously followed the person he suspected of being the driver of the auto, assaulted him with a rifle, robbed him of his wallet, and then used the victim's credit card to charge approximately $3,000 worth of merchandise before being captured.

Department that Gibson had a schizoid personality; a probable neurotic compulsion; that he tended to project and act out great anger towards people; that he exhibited hysterical reactions to stressful situations; and that he extracted compensation in a direct and inappropriate manner from those who he believed had harmed him. Gibson was subsequently placed on probation under the supervision of probation officers Meyers and Cobb of the Yolo County Probation Department. While on probation Gibson was again arrested and charged with the theft of beehives, frames, and bees owned by appellant Whitcombe. Both Whitcombe and his employee, appellant Hernandez, assisted in the investigation of the theft. After being held for several days, Gibson was released from custody on bail.

Six days later Gibson assaulted and severely injured both appellants. Forcing Whitcombe to lie down, he crushed his skull with the butt end of a shotgun, and repeatedly struck him with a hammer. Similarly, forcing Hernandez to the ground, he bound his hands and feet; and with a rope wrapped around his neck, strangled him into unconsciousness.

Appellants subsequently filed their complaint for damages alleging 10 causes of action. (Causes one through five refer to appellant Whitcombe. Causes six through ten are identical, but refer to appellant Hernandez.) They allege: first, that defendants Yolo County, Yolo County Probation Department, Richard Meyers, and Chuck Cobb neglected to undertake the ministerial acts of investigating the accusations leading to Gibson's second arrest, neglected to confer with anyone for the purpose of determining whether to revoke his probation, and neglected to ascertain whether Gibson constituted a danger to society. Second, that defendants Yolo County, Yolo County Probation Department, and Officers Meyers and Cobb failed to discharge mandatory duties established by Penal Code sections 1203.10 and 1203.12, to wit: probation officers shall investigate alleged activities of their probationers which may violate the terms of their probation and report to the court any actual violations. Third, that defendants Yolo County, Yolo County Probation Department, and Officers Meyers and Cobb breached a special relationship between defendants and appellants which arose due to the assistance provided by appellants in investigating the theft and identifying the stolen goods. Fourth, that defendants Yolo County and the Yolo County Probation Department wrongfully retained Officer Meyers, Gibson's principal probation officer. Fifth, Meyers' willful and malicious disre-

gard for the safety of appellants. The complaint prays for punitive damages against Meyers in his individual capacity.

I

At the threshold we dispose of the theory, advanced by both parties, that a finding of a "special relationship" between governmental entity and litigants necessarily abrogates the discretionary immunity doctrine.

The parties assume that if we conclude the alleged facts establish as a matter of law the existence of a "special relationship" (a relationship giving rise to the county's duty to act prudently, and appellants' justifiable reliance thereon) we will obviate the need to consider whether respondents are immune from liability under sovereign immunity principles. Implicit in this exception theory is the assumption the "special relationship" creates an affirmative governmental responsibility which when breached gives rise to governmental liability notwithstanding the discretionary (immunized) character of the tortious act.

The purported exception is advanced in only three cases: *Hartzler* v. *City of San Jose* (1975) 46 Cal.App.3d 6 [120 Cal.Rptr. 5]; *Antique Arts Corp.* v. *City of Torrance* (1974) 39 Cal.App.3d 588 [114 Cal.Rptr. 332]; and *McCarthy* v. *Frost* (1973) 33 Cal.App.3d 872 [109 Cal.Rptr. 470]. In *Hartzler* the court stated "[e]ven though there is initially no liability on the part of the government for its acts or omissions, once it undertakes action on behalf of a member of the public, and thereby induces that individual's reliance, it is then held to the same standard of care as a private person or organization." (*Id.*, at p. 10.) Nevertheless, neither party challenges the basis of the exception; they differ only in their conclusions as to whether the requisite relationship exists in this case.

Two reasons compel us to reject the theory. First, it purports to impose liability for discretionary governmental acts or omissions granted unqualified immunity by the California Tort Claims Act. (Gov. Code, § 810 et seq.) Sanctioning a special relationship exception would ignore this touchstone of sovereign immunity law. This we refuse to do. The theory creates an unresolvable paradox for it is axiomatic that governmental liability cannot exist when the complained of act falls within the realm of discretionary immunity. By definition, an immunity "avoids liability in tort under all circumstances, within the limits of the immunity itself; it is

conferred, not because of the particular facts, but because of the status or position of the favored defendant; and it does not deny the tort, but [rather] the resulting liability. [Fn. omitted.]" (Prosser, Torts (4th ed. 1971) Governmental Immunity, § 131, p. 970.) Thus, the dispositive question is not whether the existence of a special relationship operates to bypass the grant of immunity, but rather whether the act itself comes under the doctrine of discretionary immunity.

Second, the special relationship exception is without persuasive precedent. Close scrutiny shows that *McCarthy, Antique Arts* and *Hartzler* are not adequately supported by the authority they cite.[2]

In *Johnson* v. *State of California* (1968) 69 Cal.2d 782, footnote 2 [73 Cal.Rptr. 240, 447 P.2d 352], the court defined immunized (discretionary) acts as those basic policy decisions entrusted to a coordinate branch of government. The court made it clear that only subsequent "ministerial" actions implementing the basic policy decisions may form the basis for negligence. " '[O]nce the determination has been made that a service will be furnished *and* the service is undertaken, *then* public policy demands (except when the Legislature specifically decrees otherwise) that government be held to the same standard of care the law requires of its private citizens in the performance of duties imposed by law or assumed.' " (*Id.,* at p. 796, quoting *Sava* v. *Fuller, supra,* at p. 290.) (Italics added.)[3] Again, in *McCorkle* v. *City of Los Angeles* (1969) 70

---

[2]*McCorkle* v. *City of Los Angeles* (1969) 70 Cal.2d 252 [74 Cal.Rptr. 389, 449 P.2d 453]; *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352]; *Connelly* v. *State of California* (1970) 3 Cal.App.3d 744 [84 Cal.Rptr. 257]; *Sava* v. *Fuller* (1967) 249 Cal.App.2d 281 [57 Cal.Rptr. 312]; *Morgan* v. *County of Yuba* (1964) 230 Cal.App.2d 938 [41 Cal.Rptr. 508].

[3] The *Johnson* court also supported its analysis with a long line of federal cases under the Federal Tort Claims Act (28 U.S.C. §§ 1291, 1346, 1402, 1504, 2110, 2401, 2402, 2411, 2412, 2671 et seq.). The court cited: "*United States* v. *Washington* (9th Cir. 1965) 351 F.2d 913, 916 (decision as to where to place wire across canyon was assumed to be discretionary, but failure to warn pilot was not); *United Air Lines, Inc.* v. *Wiener* (9th Cir. 1964) 335 F.2d 379, 397-398, cert. dism. *sub nom. United Air Lines, Inc.* v. *United States* (1964) 379 U.S. 951 [13 L.Ed.2d 549, 85 S.Ct. 452] (decision to conduct air flights was discretionary, but failure to warn commercial airline was not); *United States* v. *White* (9th Cir. 1954) 211 F.2d 79, 82 (decision not to 'dedud' army firing range assumed to be discretionary, but telling persons about to go onto range that it was safe not discretionary); *Costley* v. *United States* (5th Cir. 1950) 181 F.2d 723, 724-725 (discretionary function to admit patient to hospital, but no immunity for treatment thereafter); *Bulloch* v. *United States* (D. Utah 1955) 133 F.Supp. 885, 889 (decision as to how and when and in what manner to conduct nuclear tests was discretionary, but failure to give proper notice was not); *Hernandez* v. *United States* (D. Hawaii 1953) 112 F.Supp. 369,

Cal.2d 252 [74 Cal.Rptr. 389, 449 P.2d 453], the court stated "the act of a public employee . . . will not produce immunity . . . if the injury . . . results, not from the employee's exercise of 'discretion vested in him' to *undertake* the act, but from his negligence in performing it *after* having made the discretionary decision to do so." (*Id.,* at p. 261.) (Italics added.)

Accordingly, in every case cited as authority for the "special relationship" exception, the reviewing court recognized the distinction between immune discretionary acts and unprotected subsequent ministerial acts and predicated a finding of liability on the negligent subsequent ministerial implementation of the basic immunized policy act.

The exception theory apparently stems from a misinterpretation of the use of the term "special relationship" in immunity cases. It is, of course, well settled that one requisite element of a prima facie negligence case is "duty"—a matter of relation between the parties which is founded upon the foreseeability of harm to the person in fact injured (see *Palsgraf* v. *Long Island R. R. Co.* (1928) 248 N.Y. 339 [162 N.E. 99, 59 A.L.R. 1253]), and which gives rise to a corresponding obligation to take reasonable precautions for the safety of the person. Indeed, the obligation may extend to the exercise of control over third persons (Rest.2d Torts, § 315 et seq.), as is the case here, and in much immunity litigation. Stated otherwise, the existence of a special relationship may give rise to a duty on the part of defendants to act reasonably and exercise ordinary care. If so, there is then the question whether defendants were negligent as a matter of general tort law. (See *Mann* v. *State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82].) Nevertheless, "duty" is only a threshold issue, beyond which remain the immunity barriers which may only be overcome by a finding of "ministerial" negligence.

The overwhelming majority of cases adhere to the discretionary-ministerial dichotomy; we too consider it the correct approach, noting, however, its restricted application in the area of police and correctional activities. (See discussion, *infra.*) Accordingly, we reject the "special relationship" theory in its entirety. The reasoning underlying *McCarthy, Antique Arts,* and *Hartzler* is unconvincing.

371 (discretionary to erect road block, but failure to warn of the hazard created was not); *Worley* v. *United States* (D. Ore. 1952) 119 F.Supp. 719, 721 (decision to use coyote traps assumed to be discretionary, but failure to warn is not)." (At pp. 796-797.)

## II

■ Next, we examine appellants' contention that Penal Code sections 1203.10[4] and 1203.12[5] impose mandatory duties upon the county and that the county breached those duties with regard to probationer Gibson, thus effectively precluding the court from determining pursuant to subdivision (b) of Penal Code section 1203.2[6] whether to revoke Gibson's probation. They allege the breach proximately caused appellants' injuries; and argue that pursuant to Government Code section 815.6[7] the county is liable for its breach notwithstanding its defense of sovereign immunity. The argument lacks merit.

We fault the argument inasmuch as we find among other things the proximate cause requirement of section 815.6 unsatisfied by the facts in this case.

■ " 'Proximate cause is legal cause, as distinguished from the layman's notion of actual cause, and is always, in the first instance, a question of law.' " (*Golden* v. *Dungan* (1971) 20 Cal.App.3d 295 [97 Cal.Rptr. 577]; *Tate* v. *Canonica* (1960) 180 Cal.App.2d 898 [5 Cal.Rptr.

---

[4]Section 1203.10 provides in pertinent part: "If any . . . person shall be released on probation and committed to the care of the probation officer, such officer shall keep a complete and accurate record in suitable books or other form in writing of the history of the case in court, and of the name of the probation officer, and his act in connection with said case; also the age, sex, nativity, residence, education, habit of temperance, whether married or single, and the conduct, employment and occupation, and parents' occupation, and condition of such person committed to his care during the term of such probation and the result of such probation. Such record of such probation officer shall be and constitute a part of the records of the court, and shall at all times be open to the inspection of the court or of any person appointed by the court for that purpose, as well as of all magistrates, and the chief of police, or other heads of the police, unless otherwise ordered by the court."

[5]Section 1203.12 provides in pertinent part: "The probation officer shall . . . report to the court, or judge, releasing such person on probation, any violation or breach of the terms and conditions imposed by such court on the person placed in his care."

[6]Subdivision (b) of Penal Code section 1203.2 states in pertinent part: "(b) Upon its own motion or upon the petition of the probationer or the district attorney of the county in which the probationer is supervised, the court may modify, revoke, or terminate the probation of the probationer pursuant to this subdivision. . . . After the receipt of a written report from the probation officer, the court shall read and consider the report and either its motion or the petition and may modify, revoke, or terminate the probation of the probationer . . . if the interests of justice so require."

[7]Government Code section 815.6 provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

28].) Proximate cause " 'is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produced the injury [or damage complained of] and without which such result would not have occurred.' " (*Kettman v. Levine* (1953) 115 Cal.App.2d 844 [253 P.2d 102].)

■ Granting or revoking probation is within the discretion of the trial court. While the court must consider a probation officer's report, it is not bound by that report and recommendation, or, indeed, the record of the case. Rather, "[i]t must be guided by considerations pertaining to psychology, sociology and penology, or, in the words of the code, to 'the ends of justice'; by general rules of policy which have not been and in the nature of the case should not be crystallized into positive or definite rules of law." (*People v. Jones* (1927) 87 Cal.App. 482, 497 [262 P. 361].)

■ In view of the latitude accorded the trial court, appellants' argument that defendants' alleged inaction in keeping and presenting reports about Gibson precluded the court from revoking Gibson's probation and thus proximately caused their injuries, is specious. Even had the court reviewed Gibson's record, it remained under no obligation to revoke probation. And if it had not, the proximate cause of appellants' injuries would, at best, be the court's considered decision; manifestly an act immunized from liability under Government Code section 845.8, subdivision (a). (See discussion, *infra.*) Thus, the requirement of section 815.6 that the injury be proximately caused by the failure to discharge the duty, is not satisfied.

## III

Having foreclosed appellants' extra-immunity avenues of relief, the dispositive issue is a narrow one: Whether the alleged acts were in fact discretionary and therefore immunized, or ministerial and thus susceptible to a cause of action.

Appellants contend defendants are not immune from liability inasmuch as they failed to perform the unprivileged "ministerial" acts enumerated above, *ante,* at pages 703 and 704. Defendants urge their demurrer be sustained because the alleged acts were inherently part of their decision not to revoke Gibson's probation and as such are

immunized from liability under Government Code sections 845.8, subdivision (a) and 846.[8] We hold for defendants.

■ The liability of public entities and public officers is governed by the California Tort Claims Act (Gov. Code, § 810 et seq.).[9]

Section 815 of the act states: "Except as otherwise provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or public employee or any other person."

Section 815.2 provides: "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

"(b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

Section 820.2 provides generally: "[A] public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."[10]

---

[8]Government Code section 846 reads: "Neither a public entity nor a public employee is liable for injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody."

Because we conclude defendants are immunized from liability under section 845.8, subdivision (a), we do not decide whether section 846 extends a similar immunity.

[9]Appellants contend the immunities accorded public entities and officers by the act are unconstitutional as a denial of equal protection of the laws. We reject the contention. There is ample judicial authority upholding the constitutionality of the act. (*County of Los Angeles* v. *Superior Court* (1965) 62 Cal.2d 839 [44 Cal.Rptr. 796, 402 P.2d 868], cf. *Heieck and Moran* v. *City of Modesto* (1966) 64 Cal.2d 229 [49 Cal.Rptr. 377, 411 P.2d 105].)

[10]The Legislative Committee comment to section 820.2 notes: "The discretionary immunity rule is restated here in statutory form to ensure that, unless otherwise provided by statute, public employees will continue to remain immune from liability for their discretionary acts within the scope of their employment.

"In the sections that follow, several immunities of public employees are set forth even though they have been regarded as within the discretionary immunity. These specific immunities are stated in statutory form so that the liability of public entities and employees may not be expanded by redefining 'discretionary immunity' to exclude certain acts that had previously been considered as discretionary."

Section 845.8, subdivision (a), states specifically: "Neither a public entity nor a public employee is liable for:

"(a) Any injury resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke his parole or release."[11]

Sections 820.2 and 845.8, subdivision (a), have been authoritatively construed by our Supreme Court in the seminal *Johnson* decision, *supra,* 69 Cal.2d 782. There, California Youth Authority personnel placed a boy in a foster home without warning the foster parents of the boy's homicidal tendencies and general propensity for violence and cruelty; the youth subsequently inflicted serious injuries upon the foster parents. The foster parents brought an action against the state for negligent failure to warn, to which the state asserted immunity pursuant to section 845.8, subdivision (a).

In the course of upholding the action, the court articulated the distinction between "discretionary" (immunized), and "ministerial" (nonimmunized) acts,[12] stating " '[m]uch of what is done by officers and employees of the government must remain beyond the range of judicial inquiry' [citation]; obviously, 'it is not a tort for government to govern' [citation]. Courts and commentators have therefore centered their attention on an assurance of judicial abstention in areas in which the responsibility for *basic policy decisions* has been committed to coordinate branches of government." (*Johnson, supra,* at p. 793.) (Italics in original.)

To focus that attention, the court set forth several of the policy considerations relevant to the governmental claim of immunity. Citing *Lipman* v. *Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224, at page

---

[11]The California Law Revision Commission comment to section 845.8, subdivision (a), reads in part: "The extent of the freedom that must be accorded to prisoners for rehabilitative purposes . . . should be determined by the proper public officials unfettered by any fear that their decisions may result in liability."

[12]"If the words 'the exercise of the discretion' were to be given a broad, literal interpretation, section 820.2 could be invoked to establish immunity from liability for every act and omission of public employees, for, ' . . . it would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail.' [Citations.]" (*Elton* v. *County of Orange* (1970) 3 Cal.App.3d 1053, 1057 [84 Cal.Rptr. 27].)

230 [11 Cal.Rptr. 97, 359 P.2d 465],[13] the court declared: " 'Although it may not be possible to set forth a definitive rule which would determine in every instance whether a governmental agency is liable for discretionary acts of its officials, various factors furnish a means of deciding whether the agency in a particular case should have immunity, such as the importance to the public of the function involved, the extent to which governmental liability might impair free exercise of the function, and the availability to individuals affected of remedies other than tort suits for damages.' "[14] (*Id.,* at p. 789.)

Further, the court emphasized that immunity·is mandated in those isolated areas of "quasi-legislative policy-making which are sufficiently sensitive to justify a blanket rule that courts will not entertain a tort action alleging that careless conduct contributed to·the governmental decision." (*Id.,* at p. 794.)

Thus in *Johnson,* the court found, "[t]he Youth Authority unquestionably makes some decisions falling within the 'discretionary function' language of section 820.2 . . . . As to the determination of whether to place a youth on parole . . . the Legislature has specifically granted to the Youth Authority the power to weigh potential risks and benefits and to establish standards: . . . [hence], the decision to parole . . . comprises the resolution of policy considerations, entrusted by statute to a coordinate branch of government, that compels immunity from judicial reexamination. [Fn. omitted.]" (*Id.,* at p. 795.)

Nevertheless, the court noted: " '[O]nce the determination has been made that a service will be furnished and the service is undertaken, then public policy demands (except when the Legislature specifically decrees otherwise) that government be held to the same standard of care the law requires of its private citizens in the performance of duties imposed by law or assumed.' " (*Id.,* at p. 796, citing *Sava* v. *Fuller* (1967) 249 Cal.App.2d 281, 290 [57 Cal.Rptr. 312].)

---

[13]Though *Lipman* predates the California Tort Claims Act, the Legislature specifically approved its approach. The Senate Committee on Judiciary comment to section 820.2, part of the 1963 codification of sovereign immunity law, states: "This section restates the pre-existing California law," (citing *Lipman* inter alia. (Sen. J. (Apr. 24, 1963) p. 1889.)

[14]Unfortunately, precise application of this threefold test is difficult in the absence of more specific legislative or Supreme Court guidelines (and perhaps accounts for the plethora of multifarious sovereign immunity decisions found in our state reports). For instance, the standards by which to judge the " 'importance to the public of the function involved' " are at best indeterminate, at worst undiscernable. (See 15 Santa Clara Law. 454, 471-472.)

Accordingly, once the proper authorities effectuate the basic policy decision—actually placing the youth in the foster home for example—the role of immunity ends. "[S]ubsequent negligent actions, such as the failure to give reasonable warnings . . . are subject to legal redress" (*id.,* at p. 799), for "the determination as to whether to warn the foster parents of latent dangers facing them . . . [stands] at the lowest, ministerial rung of official action." (*Id.,* at pp. 795, 796.)

Here the court reasoned the failure to warn of foreseeable latent dangers flowing from the basic immune decision presented no reason for immunity: The officer's decision failed to rise to the level of governmental decisions calling for judicial restraint; courts encounter suits of this type regularly and are well suited to resolve them under traditional tort theory; the loss falls peculiarly on the appellants, who must achieve vindication in the courts or not at all; suits against the state provide a fair and efficient means of distributing individual losses suffered as the result of state action. (*Id.,* at pp. 797, 798.)

While the *Johnson* court found that the immunity provided by section 845.8, subdivision (a), did not encompass the state's decision not to warn of foreseeable dangers, it is important to note that in delineating the scope of section 845.8, subdivision (a), the court found the Legislature had determined "that each member of the general public who chances to come into contact with a parolee bear the risk that the rehabilitative effort will fail, . . ." (*Id.,* at p. 799, citing the Cal. Law Revision Com. comment to § 845.8.)

■ Professor Van Alstyne, consultant to the California Law Revision Commission, analyzes this statement to mean "that immunity from liability for parole decisions under section 845.8 is mandatory and not dependent on policy evaluation required when immunity is claimed under the general language of Govt C 820.2." (Van Alstyne, Cal. Government Tort Liability (Cont.Ed.Bar Supp. 1969) § 7.18, p. 69.) Moreover, he perceives that in light of *Johnson, supra,* Government Code section 845.8, subdivision (a) not only "removes the necessity for the court to determine whether the particular conduct described in the . . . provision embraces policymaking functions requiring insulation from judicial surveillance in tort litigation and thus identifiable as a 'discretionary' activity" but also that it "makes it unnecessary for the public entity to establish that conduct falling within its purview represented a conscious policy decision entitled to immunity. A showing of this kind is essential to a claim of immunity under Govt C 820.2; but, under a specific

immunity section, the legislature seemingly has already concluded that all conduct within its terms is entitled to immunity without regard to its rationality." (*Id.,* at p. 69.)[15]

■ Applying the foregoing to the instant case, it appears to us patent that the acts complained of are integral to the ultimate basic policy decision not to revoke Gibson's probation. As such, immunity would lie pursuant to section 820.2. Yet, we need not resort to that general discretionary immunity section, for unlike *Johnson* this case does not pose the situation where after the basic policy decision is made there exists a relationship which gives rise to defendant's duty to warn of a foreseeable danger and a corresponding reliance on that duty by appellants. Rather, appellants complain in essence of the actual decision not to revoke, and as such they stand in no different status than the general public who must bear the risk that unfettered official freedom in pursuing rehabilitative programs will fail. Thus, we find immunity pursuant to section 845.8, subdivision (a).

We note that in construing section 856[16] an analogous provision of the Tort Claims Act, the Supreme Court has similarly held that immunity extends to all determinations involved in the civil commitment process including determinations not to confine or to release. Importantly, the court found the immunity granted to both those empowered to confine, and those authorized to request or recommend confinement. "[T]he scope of the immunity extends not only to the final determination to confine or not to confine the person for mental illness, but to all determinations involved in the process of commitment." (*Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 448 [131 Cal.Rptr. 14, 551 P.2d 334].)

Our conclusion is bolstered by several additional cases.

---

[15] This analysis, of which we approve, effectively rebuts appellants' argument that the demurrer was improperly sustained because a factual question exists as to whether the "exercise of discretion" by defendants had in fact occurred.

[16] Section 856 reads in pertinent part:

"(a) Neither a public entity nor a public employee acting within the scope of his employment is liable for any injury resulting from determining in accordance with any applicable enactment:

"(1) Whether to confine a person for mental illness or addiction.

"(2) The terms and conditions of confinement for mental illness or addiction in a medical facility operated or maintained by a public entity.

"(3) Whether to parole or release a person from confinement for mental illness or addiction in a medical facility operated or maintained by a public entity."

Our Supreme Court has stated explicitly that in the area of police and correctional activities, a specific legislative mandate of immunity effectively places beyond the pale of liability both discretionary decisions themselves and their ministerial implementations. In *County of Sacramento* v. *Superior Court* (1972) 8 Cal.3d 479 [105 Cal.Rptr. 374, 503 P.2d 1382], the court held that the county's alleged negligence in permitting certain prisoners to escape from jail, and burglarize and kill plaintiff's decedent was, however unfortunate, completely immunized under section 845.8 subdivision (b).[17] The court rejected appellants' argument that negligent jail practices were "subsequent ministerial" actions susceptible to liability: "Ministerial implementation of correctional programs . . . can hardly, in any consideration of the imposition of tort liability, be isolated from discretionary judgments made in adopting such programs." (*Id.,* at p. 485.)

We recognize that section 845, subdivision (b), unlike 845.8, subdivision (a), is not limited to specific determinations or acts by public employees following which there may be a continuing relationship between the public entity and appellants warranting liability. Nevertheless, in light of *White* v. *Towers* (1951) 37 Cal.2d 727 [235 P.2d 209, 28 A.L.R.2d 636], we believe the court's general reflections on the scope of immunity provisions in the field of correctional and police activities equally persuasive in the case before us.

In that case, the Supreme Court stated: "[Immunized] '[d]uties of public office include those lying squarely within its scope, those essential to accomplishment of the main purposes for which the office was created, and those which, although only incidental and collateral, serve to promote the accomplishment of the principal purposes.' " (*Id.,* at p. 733.)[18]

---

[17] Section 845.8, subdivision (b) reads:
"Neither a public entity nor a public employee is liable for:
" . . . . . . . . . . . . . . . . .
"(b) Any injury caused by:
"(1) An escaping or escaped prisoner;
"(2) An escaping or escaped arrested person; or
"(3) A person resisting arrest."

[18] With the enactment of the California Tort Claims Act, the rationale of *White* v. *Towers, supra,* 37 Cal.2d 727, received explicit legislative approbation. (Citing *White,* the Legislative Committee comment to § 820.2 notes: "This section restates pre-existing California Law."

In *County of Santa Barbara* v. *Superior Court* (1971) 15 Cal.App.3d 751 [93 Cal.Rptr. 406],[19] a wrongful death action was brought by relatives of a man killed by an arrestee inadvertently released from custody in disregard of his violent and psychotic behavior. Their complaint alleged three acts and omissions: (1) failure of the sheriff to communicate information to the district attorney concerning arrestee's violent behavior; (2) negligent implementation of the decision to release the arrestee; and (3) failure to evaluate and treat arrestee despite knowledge of his psychotic behavior. The court found these acts of county employees charged with the day-to-day operation of the prisoner release system "inherently a part of the processes involved in determining whether to release and do not involve any conduct subsequent to that determination." (*Id.,* at p. 756.) As such, liability was foreclosed by sections 845.8, subdivision (a) and 846.

In *State of California* v. *Superior Court* (1974) 37 Cal.App.3d 1023 [112 Cal.Rptr. 706], plaintiffs brought suit for damages against the state after arson was allegedly committed by prisoners released into the general population by the state's Don Lugo Community Center. Urging their complaint referred only to "ministerial" acts, plaintiffs alleged negligent application of prison rules and regulations, resulting in improper prisoner release; and negligent enforcement of prison regulations. Relying on section 845.8, subdivision (a), the court rejected this approach, concluding that "all acts within the ambit of release procedures are immunized from tort liability." (*Id.,* at pp. 1027-1028.) It noted with approval that "[f]or purposes of imposing tort liability, courts of this state have been quite hesitant to view as ministerial particular decisions or acts involving prisoner rehabilitation . . . . [citations omitted]" (*id.,* at p. 1026), and cited *County of Sacramento* v. *Superior Court, supra,* 8 Cal.3d 479, as "illustrative of the Supreme Court's unwillingness to create sharp (but essentially artificial) distinctions between ministerial and discretionary acts." (*Id.,* at pp. 1026-1027.)

In *Morgan* v. *County of Yuba* (1964) 230 Cal.App.2d 938 [41 Cal.Rptr. 508], plaintiffs' decedent brought a wrongful death action against the county after deputy sheriffs, acting on decedent's complaint, arrested a man who had threatened decedent's life. Realizing the gravity of the situation, the officers assured decedent they would warn her of his release on bail; they failed to do so, however, and as a proximate result,

---

[19]Cited with approval in *County of Sacramento* v. *Superior Court, supra,* 8 Cal.3d, at page 484, footnote 4.

she was killed by the arrestee. Though the court upheld a cause of action for negligent failure to warn, it made clear that if the negligence charged was the release of a dangerous prisoner, there would be no liability pursuant to sections 820.2 and 845.8, subdivision (a).

The policy considerations, as we perceive them, likewise lend support to our decision. In so concluding, we apply the well-reasoned formula of *Jones* v. *Oxnard School Dist.* (1969) 270 Cal.App.2d 587 [75 Cal.Rptr. 836], to wit: " '[D]iscretionary' action . . . is privileged against tort liability . . . [and] is . . . to be given a flexible definition which balances the harm that may be caused by inhibition upon the governmental function against the desirability of providing redress for wrong that may have been done." (*Id.,* at p. 593, citing *Johnson, supra,* 69 Cal.2d 782.)

Of paramount concern is the detrimental effect a finding of liability would have on prisoner release and rehabilitation programs. Were we to find a cause of action stated we would in effect be encouraging the detention of prisoners in disregard of their rights and society's needs.

In *State of California* v. *Superior Court, supra,* 37 Cal.App.3d 1023, the court recognized as much when it stated: "[The] hesitancy to classify decisions or acts as ministerial—i.e., liability inducing—derives from a policy judgment that prison personnel might otherwise be inhibited from maintaining innovative rehabilitation—release programs." (*Id.,* at p. 1026.)

Our concern is not novel. For example, in *Ne Casek* v. *City of Los Angeles* (1965) 233 Cal.App.2d 131 [43 Cal.Rptr. 294], appellant brought an action for damages for injuries inflicted by two suspects fleeing from the custody of police officers attempting to arrest them. The court refused to hold the officers liable, reasoning that to do so would be tantamount to inviting increased use of force against arrestees in the future in order to forestall the possibility of just such claims. "A rule of law which may encourage police brutality is not desirable." (*Id.,* at p. 137.)

The discretion provided in section 845.8, subdivision (a) is particularly compelling in the area of prisoner probation because a successful rehabilitation effort requires a program marked by continuity, predictability, and yet broad leeway for officials charged with facilitating the reentry into society of diverse individuals. To here restrict its flexibility is to practically counteract the very purposes for which it exists.

We believe these concerns outweigh the desirability of providing appellants relief through the judicial process. While we recognize the greviousness of appellants' injuries, the legislation which we have construed is concerned with a greater social injury. Accordingly, we find liability foreclosed.

In view of the foregoing, it is unnecessary to reach appellants' other contentions.

The trial court's judgment of dismissal is affirmed.

Regan, Acting P. J., and Paras, J., concurred.

A petition for a rehearing was denied October 24, 1977, and appellants' petition for a hearing by the Supreme Court was denied November 25, 1977.