[Civ. No. 16386. Fourth Dist., Div. One. Sept. 22, 1978.]

GEORGE MARTINEZ et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al.,
Defendants and Respondents.

**COUNSEL**

Thompson, Sullivan, McGrath & McDonald, Donald McGrath II, William A. Bramley III and Walter P. Christensen for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, and Jeffrey T. Miller, Deputy Attorney General, for Defendants and Respondents.

**OPINION**

**BROWN (Gerald), P. J.**—George Martinez appeals the judgment following an order sustaining state's demurrer without leave to amend.

Richard June-Jordan Thomas was convicted on December 12, 1969, of attempted forcible rape. He was sent to Atascadero State Hospital for six months where he was designated a "Mentally Disordered Sex Offender"

(MDSO), not amenable to treatment. He was sentenced to prison for from six months to twenty years in April 1970 and was paroled five years later on condition he appear regularly at a "parole out-patient clinic." Five months after his release Thomas kidnaped and murdered Mary Ellen Martinez, a fifteen year old.

George Martinez filed suit for his daughter's wrongful death and for civil rights violations in six causes of action alleging defendants were negligent in releasing Thomas, failed to supervise Thomas properly while he was on parole, violated the Federal Civil Rights Act[1] and failed to warn females Thomas was loose. He sought compensatory and punitive damages. We consider each cause of action in turn.

■ The first cause of action alleged the defendants were employed by the California Department of Corrections and the Adult Authority, had a duty to be reasonably careful in paroling prisoners and had breached that duty because no prudent, reasonable person knowing Thomas' history would have released him. Martinez says governmental immunity provided by Government Code section 845.8, subdivision (a)[2] does not apply because the employees here were acting outside the course and scope of their employment. However, even if these employees abused their discretion by granting parole knowing Thomas had tortured two girls in attempting to rape them, was an untreatable MDSO with a recommendation of no parole, had received no psychiatric treatment during his incarceration and had no psychiatric evaluation after his request this does not make them liable. The statute by its own terms releases an employee from any liability stemming from the exercise of his discretion in determining whether a prisoner should be released (see Gov. Code § 820.2; see *State of California* v. *Superior Court*, 37 Cal.App.3d 1023, 1026 [112 Cal.Rptr. 706]).

---

[1]42 United States Code Annotated, section 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[2]This statute states: "Neither a public entity nor a public employee is liable for: (a) Any injury resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke his parole or release. (b) Any injury caused by: (1) An escaping or escaped prisoner; (2) An escaping or escaped arrested person; or (3) A person resisting arrest."

As for the charge these employees were not acting within the scope of their employment, there are no allegations they were doing anything other than what they were hired to do, that is, determine when prisoners are to be paroled (*Burgdorf* v. *Funder*, 246 Cal.App.2d 443, 448 [54 Cal.Rptr. 805]).

In his second cause of action Martinez says the state's employees were negligent in "performing ministerial acts of release." He claims Government Code section 845.8, subdivision (b) grants employees absolute immunity for discretionary and ministerial acts when dealing with escapees, while section 845.8, subdivision (a) covers only those injuries flowing from "determinations" about parole (see fn. 2; *County of Sacramento* v. *Superior Court*, 8 Cal.3d 479 [105 Cal.Rptr. 374, 503 P.2d 1382]). In short, he says section 845.8, subdivision (a) confers discretionary immunity but not absolute immunity. In making a decision to release a prisoner the actual decision, including the ministerial act of applying established rules and regulations to the particular case in question, is covered by governmental immunity (*State of California* v. *Superior Court*, *supra*, 37 Cal.App.3d 1023, 1027-1028). Not covered are ministerial acts in carrying out the decision to release the person, and an allegation of negligence must be determined on a case-by-case basis (*Johnson* v. *State of California*, 69 Cal.2d 782, 797 [73 Cal.Rptr. 240, 447 P.2d 352]); see *Morgan* v. *County of Yuba*, 230 Cal.App.2d 938, 942 [41 Cal.Rptr. 508]). In this count Martinez does not allege negligence occurring after the decision to release Thomas. The complaint, by reference, incorporates allegations from the first count that: the employees knew Thomas had tortured the girls during the attempted rapes; he had been declared an untreatable MDSO; it had been recommended he not be paroled; he had received no psychiatric treatment; and, had no psychiatric evaluation within 30 days of his request. All of these acts or omissions are part of the discretionary act of releasing a prisoner and come within the government's immunity.

In his third cause of action Martinez says the state was negligent in failing to warn females using Tecolote Canyon of the danger now that Thomas was released. At oral argument he agreed this count should be dismissed because there was no continuing relationship between the state and the victim (*Whitcombe* v. *County of Yolo*, 73 Cal.App.3d 698, 713 [141 Cal.Rptr. 189]).

In his fourth cause of action Martinez claims the state wantonly, wilfully and maliciously failed to supervise Thomas. The decision on

what conditions to impose upon a parolee including, for example, the imposition of a certain amount of supervision is part of the determination in section 845.8, subdivision (a) which is immune from liability. However, supervision of a parolee consists of the "ministerial implementation of correctional programs [which] can hardly . . . be isolated from discretionary judgments in adopting such programs." (See *County of Sacramento* v. *Superior Court, supra,* 8 Cal.3d 479, 485.) Thus, for correctional activities, both discretionary decisions and their ministerial implementation come under the blanket of immunity (*Whitcombe* v. *County of Yolo, supra,* 73 Cal.App.3d 698, 714) and Martinez has not stated a cause of action.

Martinez's fifth cause of action alleges violation of the Federal Civil Rights Act (see fn. 1), saying the acts of the individual respondents under Penal Code sections 5075 and 5077[3] caused and deprived Mary Ellen of her life and liberty. He points out that governmental immunity is not an absolute bar to such a suit (*Kletschka* v. *Driver,* 411 F.2d 436, 448). ■ However, official acts are privileged if they were done within the scope of their official duties (*Ahlstrand* v. *Lethert,* 319 F.Supp. 283, 284). As members of the Adult Authority, they are performing quasi-judicial functions when they make determinations regarding parole and are immune from suit under the Civil Rights Act (*Fitzgerald* v. *Procunier,* 393 F.Supp. 335, 343).

Martinez claims Mary Ellen's death resulted from actions and omissions above and beyond the actual processing of applications for parole, such as the failure to warn, and the failure to supervise Thomas. In addition, he argues that public policy considerations support the application of a restricted immunity with regard to civil rights actions brought by injured citizens. We weigh his arguments propounding liability against the local rule of immunity (*Kletschka* v. *Driver, supra,* 411 F.2d 436, 448). The factors Martinez cites against absolute immunity are: an official who acts maliciously should be liable; it may not be in the public's interest always to have an official execute his duties with the utmost zeal; other social values, for example, the right to life and physical safety, may be more important than immunity; and indemnity by the state reduces the consequences of the liability of public officials. However, there are no facts here to show malice. Thomas was eligible for parole; the members of the Adult Authority determined he was ready for it. There is no sure formula for the members to know when a convict is rehabilitated and

[3]Section 5075 concerns the members, appointment, term, vacancies and qualifications of persons on the Adult Authority while section 5077 deals with granting and revoking of parole by the Adult Authority.

ready to reenter society. Yet it is important for the well-being of both society and the individual, to release persons as soon as they are rehabilitated. It is to society's advantage to try a variety of rehabilitative efforts and to use the maximum flexibility in facilitating the individual's reentry into society. In order to accomplish these aims it is necessary for public officials to make these decisions without fear they will be liable if they are wrong (see *Whitcombe* v. *County of Yolo, supra,* 73 Cal.App.3d 698, 710, fn. 11, 716). There is no liability for these injuries as pleaded under the Civil Rights Act.

In his sixth cause of action Martinez charges the state was negligent in failing to revoke Thomas' parole, supervise him properly and warn young females after it learned of its agents' unauthorized acts in releasing him. Since the acts of its employees are covered by governmental immunity, as discussed earlier, the state is not liable.

■ Martinez says the statute, Government Code section 845.8, subdivision (a), is unconstitutional because it permits the deprivation of life, a fundamental right, without due process. He suggests the statute, if it confers absolute immunity, encouraged the actions resulting in Mary Ellen's death and, thus, requires a compelling state interest. However, the Legislature has broad powers to control governmental tort liability limited only by the rule it not act arbitrarily (*Reed* v. *City & County of San Francisco,* 237 Cal.App.2d 23, 24 [46 Cal.Rptr. 543]). The California Tort Claims Act as a whole (Gov. Code, § 810 et seq.) has been found constitutional (*Datil* v. *City of Los Angeles,* 263 Cal.App.2d 655, 660-661 [69 Cal.Rptr. 788]). The stated purpose of section 845.8, subdivision (a), is to allow correctional personnel to make determinations of release or parole unfettered by any fear of tort liability (Law Revision Com. com.). To impose tort liability would have a chilling effect on the decision-making process, impede implementation of trial release programs and prolong incarceration unjustifiably for many prisoners. There is a rational relationship between the state's purposes and the statute.

Martinez says the trial court abused its discretion in sustaining the demurrers without leave to amend. ■ However, leave to amend is properly denied when the facts are not in dispute, the nature of the claim is clear but there is no liability under substantive law (*Sackett* v. *Wyatt,* 32 Cal.App.3d 592, 603 [108 Cal.Rptr. 219]). Here the only questions were legal ones: whether the immunity of Government Code section 845.8, subdivision (a) applied, whether *Johnson* v. *State of California, supra,* 69 Cal.2d 782, 797) applied, whether the federal Civil Rights Act applied

and whether the statute was constitutional. Under the facts as stated there is no liability here and it would be futile to permit further amendment.

The judgment is affirmed.

Cologne, J., and Wiener, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 15, 1978.