[Civ. No. 43901. First Dist., Div. Four. Jan. 16, 1979.]

DONALD BEAUCHENE, Plaintiff and Appellant, v.
SYNANON FOUNDATION, INC., Defendant and Respondent.

**COUNSEL**

McGuinn & Moore, Bruce S. Osterman and David May for Plaintiff and Appellant.

David R. Benjamin for Defendant and Respondent.

**OPINION**

**CHRISTIAN, J.**—Donald Beauchene appeals from a judgment of dismissal which was rendered after the court sustained a demurrer to his complaint in which he had alleged that Synanon Foundation, Inc. was liable for the intentional criminal behavior of Lynn Bentley, who injured appellant after eloping from a Synanon home.

██ On appeal after a sustained demurrer, the court must assume the truth of the factual allegations of the complaint. (*Hoyem* v. *Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 517 [150 Cal.Rptr. 1, 585 P.2d 851].) ██ The function of a demurrer is to test the legal sufficiency of the challenged pleading. (*Whitcombe* v. *County of Yolo* (1977) 73 Cal.App.3d 698, 702 [141 Cal.Rptr. 189].)

Appellant in his complaint as modified by admissions in his briefs, alleges that Synanon Foundation, Inc. is a voluntary private rehabilitation institution that provides a structured or controlled environment for its residents. Its primary purpose is the rehabilitation of drug addicts, alcoholics, and other people with character disorders. With the prior approval of Synanon, California courts have sometimes sent convicted persons to Synanon rather than to a county jail or state prison. Before respondent accepts a convicted person, the person allegedly is screened and interviewed to determine whether his involvement in the program will be dangerous to himself, to Synanon, or to society generally. If respondent were to determine the candidate's involvement would be dangerous, respondent would not accept the person, even if a court were willing to send him to the program.

Lynn Bentley was convicted of first degree burglary on May 2, 1975. The superior court admitted Bentley to probation on condition that he enter the "Synanon program and not leave said program without prior approval of the Probation Officer and the staff of Synanon."

Prior to accepting Bentley, respondent allegedly had rejected several dangerous individuals who had been referred by the courts. When respondent accepted Bentley, respondent knew or should have known that he had a long history of behavioral difficulties, arrests, convictions, criminal confinement, and escape attempts. One superior court had ordered that Bentley, after serving time in jail for one conviction, enter the Delancey Street drug program and not leave there without approval of the program staff. The probation department later recommended that Bentley's probation to Delancey Street be revoked, because of his inability to cooperate and comply with the rules of probation. Probation was revoked.

Respondent admitted Bentley on May 10; five days later Bentley, in violation of the court's order and without the permission of the Synanon staff, "escaped" from the program. Bentley went on a "crime spree" that included the harming or killing of several people. On May 23, 13 days after leaving the program, Bentley shot appellant in the arm.

Appellant argues that respondent had a duty to exercise due care in accepting convicted persons into the Synanon program. Alternatively, appellant argues that respondent had an affirmative duty to prevent Bentley from leaving the program.

■ Actionable negligence generally involves five elements:

(a) a defendant's legal duty to exercise due care; (b) defendant's breach of that duty; (c) the breach as the actual ("but for") cause of plaintiff's injury; (d) the breach as the proximate or legal cause of plaintiff's injury; and (e) damages to plaintiff. (See Prosser, Torts (4th ed. 1971) p. 143; 4 Witkin, Summary of Cal. Law (8th ed. 1974) pp. 2749-2750.) Elements (b), (c), (d) and (e) are ordinarily questions of fact for a jury. The existence of a legal duty is primarily a question of law. (See 4 Witkin, *supra*, pp. 2755-2759.)

■ Appellant argues respondent is liable for Bentley's criminal behavior under either of two theories. First, appellant argues respondent was under a duty (1) to refuse admittance to applicants whose record and history show that they constitute an unreasonably high risk, or (2) to reject all candidates who are unlikely to be rehabilitated, present a clear and immediate danger to the community, and would otherwise be jailed or imprisoned, or (3) to establish a blanket policy of refusing admittance to any felony probationer. Respondent allegedly breached the claimed duty by admitting Bentley to the program. Respondent's officials knew or should have known that admitting Bentley, in light of his history of criminal and antisocial behavior, presented an unreasonably dangerous risk to society. Respondent's breach was the actual cause of appellant's injury: but for respondent's accepting Bentley, Bentley would have been sent to prison, where he could not have harmed appellant. Respondent's breach was the proximate cause of appellant's injuries: Bentley's criminal behavior was allegedly not a superseding cause. Respondent was negligent precisely because of the reasonably foreseeable likelihood that Bentley would commit criminal or antisocial acts. ■ "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby." (Rest.2d Torts, § 449. See also *Hoyem* v. *Manhattan Beach City Sch. Dist., supra,* 22 Cal.3d 508, 521-522; 4 Witkin, Summary of Cal. Law, *supra,* at pp. 2922-2923.)

■ Under a second theory of liability, appellant argues that because of the special relationship that respondent undertook by accepting Bentley into its program, respondent had a duty to control Bentley's behavior so as to prevent Bentley from "escaping" or leaving the program without authorization. Because admitting Bentley presented a risk to

society, argues appellant, respondent breached its duty to control Bentley by not constructing "improvements to some of their physical plants so as to render them secure enough to prevent their dangerous probation inmates from escaping."

Both theories of liability fail because of the faulty premise that respondent owed a duty of due care to appellant. ■ Generally, a person owes no duty to control the conduct of another. Exceptions are recognized in limited situations where a special relationship exists between the defendant and the injured party, or between the defendant and the active wrongdoer. (*Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 435 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].) Appellant does not contend the first exception is applicable. (See *Johnson* v. *California* (1968) 69 Cal.2d 782, 785, 799 [73 Cal.Rptr. 240, 447 P.2d 352].) The issue is whether respondent owed appellant a duty under the second exception.

■ "Duty" is "an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection" against the defendant's conduct. (Prosser, Torts, *supra,* pp. 325-326.) The questions of duty and proximate cause are sometimes the same. (*Id.,* p. 326; see also *id.,* pp. 244-245; *Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d 425, 434.) ■ Principal policy considerations in deciding whether a duty exists include "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].)

■ Here, the court must balance "the public interest in safety from violent assault" (*Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d 425, 440) against the public policy favoring innovative criminal offender release and rehabilitation programs. (*County of Sacramento* v. *Superior Court* (1972) 8 Cal.3d 479, 485 [105 Cal.Rptr. 374, 503 P.2d 1382]; *Whitcombe* v. *County of Yolo, supra,* 73 Cal.App.3d 698, 716, 717; *State of California* v. *Superior Court* (1974) 37 Cal.App.3d 1023, 1026, 1027 [112 Cal.Rptr. 706]; *County of Santa Barbara* v. *Superior Court*

(1971) 15 Cal.App.3d 751 [93 Cal.Rptr. 406].) Although appellant's injuries may be grievous, "[o]f paramount concern is the detrimental effect a finding of liability would have on prisoner release and rehabilitation programs. Were we to find a cause of action stated we would in effect be encouraging the detention of prisoners in disregard of their rights and society's needs." (*Whitcombe* v. *County of Yolo, supra,* 73 Cal.App.3d 698, 716.) Each member of the general public who chances to come into contact with a parolee or probationer must risk that the rehabilitative effort will fail. (*Johnson* v. *California, supra,* 69 Cal.2d 782, 799; *State of California* v. *Superior Court, supra,* 37 Cal.App.3d 1023, 1027.)

The above cited cases applied Government Code section 845.8 to establish that a public entity or employee enjoys absolute immunity from liability for: "(a) Any injury resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke his parole or release. (b) Any injury caused by: (1) An escaping or escaped prisoner; (2) An escaping or escaped arrested person; or (3) A person resisting arrest." (Gov. Code, § 845.8. But see *Johnson* v. *California, supra,* 69 Cal.2d 782, 799.) Respondent concededly is not a "public entity or public employee" within the meaning of section 845.8. But the same public policy that moved the Legislature to immunize *public* release and rehabilitation programs from liability—to encourage such innovations in the interests of criminal justice—compels the conclusion that respondent's *private* release and rehabilitation program owed no legal duty to this appellant. In light of the purpose behind the governmental immunity, it would be incongruous to hold that, while the state is immune from liability for its decision to assign Bentley to, and his unauthorized departure from, the Synanon program, the program itself owed appellant a duty not to accept Bentley or to prevent his unauthorized departure. To hold respondent civilly liable would deter the development of innovative criminal offender release and rehabilitation programs, in contravention of public policy.

Because respondent owed no duty of due care to appellant, the complaint failed to state a cause of action.

The judgment is affirmed.

Caldecott, P. J., and Rattigan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 14, 1979.