In the Matter of CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent.

Third Department, May 22, 1980

APPEARANCES OF COUNSEL

*John D. McMahon (Bernard L. Sanoff* of counsel), for petitioner.

*Peter H. Schiff (Howard J. Read* of counsel), for respondent.

**OPINION OF THE COURT**

MIKOLL, J.

On May 11, 1978, petitioner, an electric, gas and steam corporation (Transportation Corporations Law, § 10) selling electric service in the City of New York and Westchester County, filed with respondent amendatory tariff leaves for increased electric rates. Petitioner sought to obtain additional revenues of $228 million, based on sales for the 12 months ending March 31, 1980. Effectuation of the proposed rates was suspended and a rate proceeding was initiated to determine reasonable rates according to subdivision 12 of section 66 of the Public Service Law.

After public hearings, the Administrative Law Judges determined that petitioner is entitled to an 8.95% over-all average rate of return and a rate increase which would generate $224,847,000. This average rate of return applies to all forms of capital, long-term debt, customer deposits, preferred stock, and common stock. The rate paid for use of capital is not the same for each category of capital. However, the recommended 8.95% average cost of this capital reflects a payout rate on common stock of 12.6%.

Respondent did not adopt the conclusions of the Administrative Law Judges as to the proper return on the common stock, but concluded that the return on this type of equity should be 12.14%. In arriving at this calculation respondent relied on the figures submitted by the petitioner which stated the amount of capital existing on which return might be given, and the amount of additional revenue needed, $228 million. In analyzing these two items respondent discovered that the requested additional revenue would have brought a return on common equity of only 12.14%, while petitioner had expressly requested a rate of return of 13.5%. Respondent also determined that petitioner's figures on its rate base were too high,

but this conclusion is not at issue in this proceeding. This 12.14% rate of return was applied to a diminished rate base and resulted in an allowed revenue increase of only $158,150,-000 rather than the requested $228,000,000. In its decision respondent stated that it did not need to reach the issue of what is a reasonable return on common stock because petitioner effectively conceded that a return of 12.14% was proper.

Petitioner then asked for a rehearing on, among other things, the issue of the propriety of the 12.14% rate of return. In granting a rehearing on some matters but not on the rate of return, respondent explained that the percentage allowed was justified by the evidence in the record, that it did not rely solely upon the rate filing and that the 12.14% rate of return was within the legal range of reasonableness. This proceeding followed.

Petitioner argues that the 12.14% rate of return is not based on expert testimony and that respondent erroneously concluded that petitioner admitted this rate of return was sufficient. We disagree. The determination is supported by substantial evidence and it does not rest solely upon the purported admissions of petitioner based on its rate filing.

Respondent, upon its consideration of the motion for rehearing, altered its rationale and explicitly stated that the 12.14% rate of return on common equity is supported by evidence in the record. The original defect in the rationale, i.e., the assumption that petitioner waived its right to show a higher rate of return was justified, does not require annulment of respondent's determination.

The record established that respondent's staff indicated that the cost of equity probably ranged between 12.0% and 12.6%. There was evidence that comparable utility stock sold at book value while returning only 12.0% on equity. Further, petitioner's capital situation is unusual and may permit a lower return than necessary to result in sales at book value. An apparent failure to pay a dividend in 1974 indicates there may be a lingering investor wariness of petitioner's stock, causing it to sell below the price justified by petitioner's economic situation. Petitioner would have a return on equity which would balance out this wariness immediately, while respondent apparently recognizes there is no need to do so because petitioner's recent sale of certain facilities obviates any need

for seeking capital in the money market in the near future. Moreover, petitioner's policy of paying small dividends and allowing appreciation, rather than paying larger cash dividends, could also reasonably be viewed as hurting the market value of petitioner's stock.

We also note that respondent's rate of return figure of 12.14% is close to other figures proposed by experts. In such a situation, where the figures are close, differences should be treated as adjustments made within the expertise of respondent and outside the scope of our limited review *(Matter of New York Tel. Co. v Public Serv. Comm. of State of N. Y.,* 64 AD2d 232, 239).

Although respondent conceded that it was "greatly influenced by the company's own selection of a 12.14% return", respondent explained that it relied on the evidence in reaching its determination and the result is not at variance with the evidence. In such a situation, we should not disturb the result. Respondent is not "bound to entertain or ignore any particular factor in discharging its * * * responsibility" *(Matter of Tele/Resources v Public Serv. Comm. of State of N. Y.,* 58 AD2d 406, 410), nor is it "bound to use any single formula or combination of formulae in determining rates * * *. Under the statutory standard of 'just and reasonable' it is the result reached and not the method employed which is controlling" *(Matter of New York Tel. Co. v Public Serv. Comm. of State of N. Y., supra,* p 240).

The issue that respondent had, in effect, adopted a new rule under which a utility consents to the rate of return implied by its rate base and revenue increased figures is not before us. Respondent stated, in its order on the motion for rehearing, that it did not consider its action a procedural rule change since it did not ignore the evidence and base its decision solely on the rate filing.

The determination should be confirmed, and the petition dismissed, without costs.

SWEENEY, J. P., STALEY, JR., MAIN and CASEY, JJ., concur.

Determination confirmed, and petition dismissed, without costs.