**Anthia VU and Hung T. Vu,**
**Plaintiffs-Appellants,**

v.

**The SINGER COMPANY, a corporation, doing business as or also known as The Singer Education Singer-Career Systems, Defendant-Appellee.**

No. 81–4632.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 15, 1982.

Decided May 26, 1983.

Rothstein, District Judge, sitting by designation, filed concurring opinion.

Allen Ruby, Morgan, Ruby, Teter, Schofield, Franich, Bouchier & Fredkin, San Jose, Cal., for plaintiffs-appellants.

Edwin A. Heafey, Jr., Mike C. Buckley, Crosby, Heafey, Roach & May, Oakland, Cal., for defendant-appellee.

Before MERRILL and POOLE, Circuit Judges, and ROTHSTEIN *, District Judge.

---

* Honorable Barbara J. Rothstein, District Judge, United States District Court for the Western District of Washington, sitting by designation.

MERRILL, Circuit Judge:

Appellants Anthia and Hung T. Vu have sued appellee The Singer Company for damages allegedly resulting from Singer's negligence. The action was removed from California state court on the ground of diversity of citizenship, and the question presented on appeal is whether, under California law, Singer, as the operator of a Job Corps Center, owed the Vus a duty of care in the supervising of Job Corps members. The District Court, construing state law as laid down in a series of court decisions, held that Singer owed no duty of care and granted summary judgment in favor of Singer. 538 F.Supp. 26 (N.D.Cal.1981).

The Job Corps was created by the Economic Opportunity Act of 1964, 42 U.S.C. § 2711 et seq. (1970) (now 29 U.S.C. § 911 et seq. (1976)). Its purpose is to assist disadvantaged young people toward useful employment by providing vocational training, work experience and educational programs. The Office of Economic Opportunity of the Department of Labor ("OEO") is authorized to enter into contracts with private contractors for the operation of Job Corps Centers where members are provided room and board and the local activities of the corps are carried out. Singer, under contract with OEO, operates the Job Corps Center at San Jose, California.

On December 17, 1978, six male and several female members of the San Jose Corps, after consuming alcohol in a public park near the center, entered the Vu home through an unlocked door. They stole some of the Vus' belongings and Mrs. Vu was raped. Some of the attackers, prior to this attack, had been known to drink to excess or use drugs and some had been involved in fights away from the center grounds; some had been convicted of theft. The record does not demonstrate, however, that any corps member, prior to this incident, had ever harmed a neighborhood resident or broken into any neighborhood home.

The Vus contend that Singer owed a duty to the residents of the neighborhood to exercise reasonable care in supervising and controlling the corps members. They assert that the corps constitutes a group of high-risk youths with histories of instability, criminal activity and substance abuse, and contend that the neighborhood should have been warned of the presence of such a group.

Appellants contend that a duty of care was imposed on Singer by the statute creating the Job Corps and the administrative regulations implementing it. The District Court stated:

Plaintiffs argue that the enabling legislation sets forth a standard of care to which Singer must adhere. 29 C.F.R. § 97a.97(a) permits each center to adopt its own behavior code which must prohibit the possession of unauthorized goods, such as drugs, and assaultive behavior. Section 97a.97(b) lists various sanctions which may be taken against corpsmembers who violate the regulations, ranging from suspension of privileges and restriction to the center to discharge from the program. 29 U.S.C.A. § 932(a) and (b) (Supp. 1981) require the centers to strictly enforce their behavior codes employing disciplinary measures. Plaintiffs assert that Singer violated the statute and the regulations by failing previously to take disciplinary action against the corpsmembers who later attacked Mrs. Vu when they were found drunk or in a drugged state at the Center or when they exhibited violent tendencies.

538 F.Supp. at 32 (footnote omitted).

The District Court held that these provisions did not create a duty of care toward the Vus because they were not members of the class for whose protection the regulations were intended. It stated:

A fair reading of the statute demonstrates that Congress intended primarily to protect the program and benefit the corpsmembers by maintaining good community relations. Community pressure to ban a Job Corps Center from the neighborhood due to corpsmember incidents would undermine the program. Although the surrounding community indirectly benefits from this Congressional objective, the statute and regulations do

not create a standard of care owed to the community, the breach of which would result in Singer's liability.

538 F.Supp. at 33.

■ We agree with this construction and conclude that no duty of care in controlling or supervising the corps members is owed to the Vus or to the neighborhood by virtue of the relevant statute, regulations or behavior code adopted by Singer. Aside from statute, regulation or code, however, questions remain as to whether a duty of care is imposed upon Singer by California's common law of torts.

California recognizes that while "under the common law, as a general rule, one person owed no duty to control the conduct of another * * *, nor to warn those endangered by such conduct * * *, the courts have carved out an exception to this rule in cases in which the defendant stands in some special relationship to either the person whose conduct needs to be controlled or in a relationship to the foreseeable victim of that conduct * * *." *Tarasoff v. Regents of the University of California,* 17 Cal.3d 425, 435, 131 Cal.Rptr. 14, 23, 551 P.2d 334, 343 (1976) (citations omitted). *See Davidson v. City of Westminster,* 32 Cal.3d 197, 203, 185 Cal.Rptr. 252, 255, 649 P.2d 894, 897 (1982).

Here Singer, as operator of a Job Corps Center, does have a special relationship with its corps members. The District Court concluded, however, that California law has provided that this exception to the general rule does not apply under the circumstances of this case for two reasons.

■ First, the Court concluded that under California law the victim must be foreseeable and specifically identifiable. 538 F.Supp. at 31. This clearly is the law of California with respect to any duty to warn. *Thompson v. County of Alameda,* 27 Cal.3d 741, 167 Cal.Rptr. 70, 614 P.2d 728 (1980). In *Thompson,* the California Supreme Court held that "public entities and employees have no affirmative duty to warn of the release of an inmate with a violent history who has made *nonspecific threats of harm directed at nonspecific victims.*" 27 Cal.3d at 754, 167 Cal.Rptr. at 77, 614 P.2d at 735 (emphasis in original).

California Courts of Appeal have extended this need for foreseeable identification of the victim to cases involving the duty to control as well as the duty to warn. In *Hooks v. Southern California Permanente Medical Group,* 107 Cal.App.3d 435, 165 Cal. Rptr. 741 (1980), which concerned the duty of a hospital to warn of or to control the conduct of a disturbed employee, the court stated that for such a duty to exist, the defendant must be put "on notice that a specific, rather than a generalized, risk exists. *Moreover, one must know that the target of the risk is an identifiable and foreseeable victim.*" 107 Cal.App.3d at 444, 165 Cal.Rptr. at 746 (emphasis added) (citations omitted). *See also Doyle v. United States,* 530 F.Supp. 1278, 1287–88 (C.D.Cal. 1982) (dicta); *McDowell v. County of Alameda,* 88 Cal.App.3d 321, 325, 151 Cal. Rptr. 779, 781–782 (1979).

Further, the District Court concluded that California's public policy favoring efforts toward rehabilitation of convicts would extend to Job Corps efforts to rehabilitate disadvantaged youths. 538 F.Supp. at 31–32.

California public policy favors efforts toward rehabilitation of prisoners through release on parole programs. California Government Code § 845.8 (West 1980) grants absolute immunity to public entities and employees from liability for any injury resulting from the grant of parole or from the conditions fixed in the grant. California courts have recognized that this section provides an exception to the rule that special relationships can result in creation of duty. *E.g., Whitcombe v. County of Yolo,* 73 Cal.App.3d 698, 710–13, 141 Cal.Rptr. 189, 195–98 (1977).

In cases involving injuries caused by persons released from confinement to take part in rehabilitation programs, California courts have not only recognized that the act of release itself is immunized, but have refused to find a duty to exercise tighter control over the person released where such would

serve to jeopardize the rehabilitation program. In *Beauchene v. Synanon Foundation, Inc.,* 88 Cal.App.3d 342, 348, 151 Cal. Rptr. 796, 799 (1979), the court quoted *Whitcombe v. County of Yolo,* 73 Cal. App.3d at 716, 141 Cal.Rptr. at 199, to the following effect:

> Although appellant's injuries may be grievous, "[o]f paramount concern is the detrimental effect a finding of liability would have on prisoner release and rehabilitation programs. Were we to find a cause of action stated we would in effect be encouraging the detention of prisoners in disregard of their rights and society's needs."

Further, the *Beauchene* court held:

> To hold respondent civilly liable would deter the development of innovative criminal offender release and rehabilitation programs, in contravention of public policy.

88 Cal.App.3d at 348, 151 Cal.Rptr. at 799.

*Beauchene* involved a private rather than a public agency. The Synanon Foundation is a voluntary private rehabilitation institution that provides a structured or controlled environment for its residents. A prisoner was admitted to probation on condition that he enter the "Synanon program". He "escaped" from the program and went on a "crime spree" in the course of which he shot appellant in the arm. Appellant brought suit charging the Synanon Foundation with negligence in allowing the prisoner to escape. California Government Code § 845.8 (West 1980) grants immunity to any public entity or employee from liability for injury caused by "an escaping or escaped prisoner". The court stated:

> Respondent concededly is not a "public entity or public employee" within the meaning of section 845.8. But the same public policy that moved the Legislature

to immunize *public* release and rehabilitation programs from liability—to encourage such innovations in the interests of criminal justice—compels the conclusion that respondent's *private* release and rehabilitation program owed no legal duty to this appellant.

88 Cal.App.3d at 348, 151 Cal.Rptr. at 799 (emphasis in original).

With reference to this public policy the District Court stated:

> *Beauchene* is applicable to the facts of this case. Although corpsmembers are not necessarily in prisoner release programs, Job Corps is designed to rehabilitate former criminal offenders, drug users and ghetto youths. *See Gibson v. United States,* 567 F.2d 1237, 1245 n. 13 (3d Cir.1977), *cert. denied,* 436 U.S. 925, 98 S.Ct. 2819, 56 L.Ed.2d 768 (1978).[1] A finding of liability on the part of Singer to victims of corpsmembers' crimes would jeopardize the program.

538 F.Supp. at 32.

In our view, this is a reasonable construction of California law.[2] To impose on the operator of a center a duty to prevent the tortious acts of corps members and to impose liability to the victims of such acts for having failed to do so would place in some degree of jeopardy the Job Corps program and its efforts towards the rehabilitation of disadvantaged young people. Faced with such potential liability an operator with any concern for its economic survival could be expected to terminate from the corps any person whose conduct suggests that he might pose a risk, whether it otherwise justifies termination or not. This would deprive of the program's benefits those most in need of rehabilitation.

Further, placing in the hands of a jury the cost of a failure on the part of an operator to perform its duties successfully

---

**1.** The footnote in *Gibson,* 567 F.2d at 1245 n. 13, to which the District Court referred reads as follows (emphasis in original): "Certainly OEO cannot be held to have been negligent for *selecting and enrolling* drug users, former criminal offenders, and ghetto youths, since those are precisely the people the program was designed to help. *See* 42 U.S.C. § 2715."

**2.** In a diversity case, the interpretation of state law by a District Judge in the state where he sits is entitled to deference. *See H.R.H. Co. v. American Mortg. Ins. Co.,* 685 F.2d 315, 317 (9th Cir.1982); *Young v. Reynolds Metals Co.,* 685 F.2d 1091, 1092 (9th Cir.1982).

(and the standards for successful performance) could well discourage as too risky the effort to perform at all.

We conclude that the District Court correctly read California law as eliminating any duty on the part of Singer to warn the Vus with respect to possible injury by corps members. Further, in our judgment the Court has reasonably predicted that, in the light of California's policy of providing support to rehabilitative programs, California courts would hold that *Beauchene* should be construed to cover such a program as that of the Job Corps. And we agree with the District Court that no duty was created by the statute and regulations creating and implementing the Job Corps. Accordingly, Singer owed no duty to the Vus to warn of or to control the conduct of corps members.

JUDGMENT AFFIRMED.

ROTHSTEIN, District Judge, concurring.

I join the majority because I believe the result is required by the holding of the California Supreme Court in *Thompson v. County of Alameda,* 27 Cal.3d 741, 614 P.2d 728, 167 Cal.Rptr. 70 (1980). Because I recognize that we must follow *Thompson* in this diversity action, I take issue not with the majority opinion but with *Thompson,* which enunciates a myopic view of foreseeability in the context of the duty to warn and to supervise.

In *Thompson,* the California court distinguished *Johnson v. State,* 69 Cal.2d 782, 447 P.2d 352, 73 Cal.Rptr. 240 (1968) and *Tarasoff v. Regents of the Univ. of California,* 17 Cal.3d 425, 551 P.2d 334, 131 Cal.Rptr. 14 (1976), the two leading cases in which an affirmative duty to protect a third party from another was found. In *Johnson,* 69 Cal.2d at 784–85, 447 P.2d at 354, 73 Cal. Rptr. at 242, the state placed a minor with "homicidal tendencies and a background of violence and cruelty" in a foster home without warning the foster parent. The minor attacked the foster parent and she sued the state. *Id.* The court held, "As the party placing the youth with Mrs. Johnson, the state's relationship to plaintiff was such that its duty extended to warning of latent,

dangerous qualities suggested by the parolee's history or character." *Id.* at 785, 447 P.2d at 355, 73 Cal.Rptr. at 243.

In *Tarasoff,* 17 Cal.3d at 430, 551 P.2d at 339–40, 131 Cal.Rptr. at 19–20, the Tarasoffs alleged that the killer of their daughter had confided to his therapist his specific intention to kill her. There, the court relied not only on the unique fact of a named victim to find a duty, but also on the plaintiff's showing of a special relationship between the killer and the therapist. *Id.* at 436, 551 P.2d at 343, 131 Cal.Rptr. at 23.

In *Thompson,* 27 Cal.3d at 746, 614 P.2d at 730, 167 Cal.Rptr. at 72, a juvenile offender, released temporarily from a county institution to his mother, murdered a neighbor's child within 24 hours of his release. The Thompsons alleged that the county knew of the juvenile's violent and dangerous impulses towards children and that the juvenile had "indicated that he would, if released, take the life of a young child in the neighborhood." *Id.* However, under these facts, the court held that no duty to warn existed because the plaintiffs had alleged neither the "direct or continuing relationship" between them and the county which existed in *Johnson,* nor that their decedent was a "foreseeable or readily identifiable target" of the offender's threats as in *Tarasoff. Thompson,* 27 Cal.3d at 753, 614 P.2d at 734, 167 Cal.Rptr. at 76.

As recognized by Justice Tobriner, the author of both the *Johnson* and *Tarasoff* opinions, the *Thompson* majority misread the controlling precedent to fashion an overly restrictive concept of foreseeability:

> The principles underlying the *Tarasoff* decision indicate that even the existence of an identifiable victim is not essential to the cause of action. Our decision rested on the basic tenet of tort law that a " 'defendant owes a duty of care to all persons who are *foreseeably* endangered by his conduct.' " The "avoidance of foreseeable harm," we explained, "requires a defendant to control the conduct of another person, or to warn of such conduct . . . if the defendant bears some special relationship to the dangerous per-

son or to the potential victim." The relationship between the therapist and patient fulfilled this requirement in *Tarasoff;* the relationship between the county and a juvenile under its custody suffices in the present case.

At no point did we hold that such duty of care runs only to identifiable victims. We cited numerous examples to the contrary. One example makes the point particularly clear: "[a] doctor must . . . warn a patient if the patient's condition or medication renders certain conduct, such as driving a car, dangerous to others." It would be absurd to confine that duty to motorists or pedestrians whom the doctor could identify in advance.

*Id.* at 760–61, 614 P.2d at 739–40, 167 Cal. Rptr. at 81–82 (Tobriner, J., dissenting) (citations and footnote omitted; emphasis in the original).

Applying the *Tarasoff* principles to the facts here, it is obvious that a special relationship exists between Singer and the corps members who victimized the Vus.[1] Thus, the inquiry is whether the Vus were foreseeable victims. The evidence shows: (1) that the Vus lived between the Job Corps Center and a nearby park, a Job Corps "hang out" that the Center placed off-limits because of the drinking and fighting that occurred there, *see Vu v. Singer,* 538 F.Supp. 26, 28 (N.D.Cal.1981); (2) after the park was placed off limits it was patrolled by Job Corps security, *id.;* (3) the corps members who attacked and robbed Mrs. Vu had been involved repeatedly in alcohol and drug abuse, assaults and thefts while at the Center, *id.* at 30 & nn. 3–5; and (4) the attack occurred while the corps members were en route from the park to the Center. *Id.* at 28. Clearly, under *Tarasoff,* the question whether the Vus, as residents of the area between the Job Corps Center and the park, were foreseeable victims presents at least a triable issue of fact. *See Thompson,* 27 Cal.3d at 761, 614 P.2d at 740, 167 Cal.Rptr. at 82 (Tobriner, J., dis-

senting); *Buford v. State,* 104 Cal.App.3d 811, 824, 164 Cal.Rptr. 264, 272 (1980).

The district court, however, was forced to conclude here that, under *Thompson,* the Vus were not foreseeable victims as a matter of law. *Vu,* 538 F.Supp. at 31. The court reasoned that *Thompson* requires a specifically identifiable victim—more specific than the class of neighborhood children threatened in *Thompson*—before a duty to warn may now arise in California. The court applied this reasoning to the "duty to control" alleged by the Vus, concluding "that no duty arises to protect unforeseeable victims from third persons, by warning or supervision, because the burden of imposing liability upon a defendant for a third person's actions is too onerous without the foreseeability limitation." *Id.* at n. 7.

As recognized by Justice Tobriner in *Thompson,* the consideration of whether the Vus are "identifiable victims" is relevant not to the existence of a duty of care, but only to the question whether a warning to the Vus might have been a reasonable means to discharge that duty. *Thompson,* 27 Cal.3d at 761, 614 P.2d at 740, 167 Cal. Rptr. at 82 (Tobriner, J., dissenting). The application of such a requirement here to a duty to control follows logically from *Thompson,* but nonetheless compounds the *Thompson* court's error in reasoning because it permits a "means" consideration to dictate the existence of a duty of care. The district court's implicit recognition that increased supervision of the corps members might well have been more effective here than warning the neighborhood underscores this error. *See Vu,* 538 F.Supp. at 31 n. 7.

Justice Tobriner also provides sound criticism applicable to the reliance, by both the district court and the majority, on *Beauchene v. Synanon Foundation, Inc.,* 88 Cal. App.3d 342, 347–48, 151 Cal.Rptr. 796, 798–99 (1979). *Beauchene* is cited to show that public policy considerations also defeat the finding of a duty of care in this case. As Justice Tobriner noted in *Thompson,* in

---

**1.** Such a relationship arguably exists even between Singer and the Vus by virtue of the continuous and close proximity of the Job Corps Center to the Vu home. The *Thompson* court's characterization of that relationship, however, effectively limits this relationship to the facts of *Johnson. See Thompson,* 27 Cal.3d at 751, 614 P.2d at 733, 167 Cal.Rptr. at 75 (relationship with specific victim).

which *Beauchene* was also cited, the policy underlying the plaintiff's cause of action was ignored by the majority. *Thompson,* 27 Cal.3d at 763, 614 P.2d at 741, 167 Cal.Rptr. at 83 (Tobriner, J., dissenting).

That policy includes the principle, embodied in California statute, of compensating victims of negligence in order to recompense their injury and to deter future negligence. *Id.* (citations omitted). "Consequently," as Justice Tobriner stated, " '[u]nless the Legislature has clearly provided for immunity, the important societal goal of compensating injured parties for damages caused by willful or negligent acts must prevail.' " *Id.* (citations omitted). These precepts should outweigh any anxiety that the California legislature erred in not immunizing privately operated rehabilitation programs.