Meyer, J.
(dissenting). My disagreement with the majority results not from its consideration of public policy as a factor in determining the scope of Con Ed’s duty, but from the fact that in reaching its public policy conclusion it has considered only one *406 side of the equation and based its conclusion on nothing more than assumption. I, therefore, respectfully dissent.
As Professors Prosser and Keeton have emphasized (Prosser and Keeton, Torts, at 357-358 [5th ed]), “The statement that there is or is not a duty begs the essential question — whether the plaintiff’s interests are entitled to legal protection against the defendant’s conduct * * * It is a shorthand statement of a conclusion, rather than an aid to analysis in itself * * * But it should be recognized that ‘duty’ is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.” We accepted the concept without reservation in De Angelis v Lutheran Med. Center (58 NY2d 1053, 1055), stating as to the role played by policy that, “A line must be drawn between the competing policy considerations of providing a remedy to everyone who is injured and of extending exposure to tort liability almost without limit.”
Although De Angelis did not define the “competing policy considerations” to be reviewed in deciding where the line is to be drawn, it made clear that “absent legislative intervention, the fixing of the ‘orbit’ of duty, as here, in the end is the responsibility of the courts”. Thus, the suggestion in the plurality opinion at the Appellate Division (98 AD2d, at p 429) that the liability issue now considered is “best addressed to the Legislature” is no more correct in the present situation than it was when in Codling v Paglia (32 NY2d 330) we imposed upon manufacturers the economic burden of strict products liability to bystanders as well as to those in privity.
There is, of course, legislative intervention in the regulation of gas and electric companies (Transportation Corporations Law art 2; Public Service Law art 4). But the only “legislative” limitation upon the liability of such companies consists of Public Service Commission acceptance and approval of Con Ed’s rate schedule, which incorporates the rule, previously enunciated by this court (Weld v Postal Telegraph-Cable Co., 199 NY 888, on second appeal 210 NY 59), that liability “be limited to damages arising from the utility’s willful misconduct or gross negligence” (Food Pageant v Consolidated Edison Co., 54 NY2d 167, 172). But, as Food Pageant and Koch v Consolidated Edison Co. (62 NY2d 548, cert denied_US_, 105 S Ct 1177) establish, what caused the injuries for which compensation is sought in this action was Con Ed’s gross negligence.
What policy considerations are involved in determining whether Con Ed’s gross negligence liability should be extended *407 to “bystanders” and where, if at all, a line should be drawn between the varying bystander situations is, then, the issue to be decided. Codling v Paglia looked at the total exclusion of the bystander from opportunity to detect a product defect, the system of mass production and distribution, the ability of the manufacturer to pass on, in part if not in whole, the economic burden of postdistribution liability, and the added incentive toward safety that could be expected to result (32 NY2d, at p 341). To that extent at least it departed from the rationale of Moch Co. v Rensselaer Water Co. (247 NY 160,168) that performance of a contract to supply water to a municipality did not impose “another duty, apart from contract, to an indefinite number of potential beneficiaries.”
Ultramares Corp. v Touche (255 NY 170), Tobin v Grossman (24 NY2d 609) and Pulka v Edelman (40 NY2d 781), on which the majority rely, spoke, it is true, to the necessity of avoiding crushing liability, but articulated no factors by which the crushing nature of the potential liability was to be determined. They can, perhaps, be distinguished from Codling on the ground that the service businesses they involved (accounting, medicine and parking) do not have the potential of Codling’s mass distribution system to pass on or absorb the resulting economic burden, but the same cannot be said for the present defendant though it too is involved in furnishing a service.
Criteria more extensive than the unsupported prediction of disaster for determining liability are not wanting, however. Thus, in Tarasoff v Regents of Univ. (17 Cal 3d 425,434,551 P2d 334, 342), the Supreme Court of California listed the major factors to be balanced in determining duty as “the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant’s conduct and the injury suffered, the moral blame attached to the defendant’s conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.” Prosser and Keeton (op. cit., supra, at 359), on the basis of the Tarasoff case and Vu v Singer Co. (538 F Supp 26, affd 706 F2d 1027, cert denied 464 US 938), list similar factors, which are discussed at greater length in section 4 of their treatise. As to the loss distribution factor, they note (op. cit, at 24-25) that, “The defendants in tort cases are to a large extent public utilities, *408 industrial corporations, commercial enterprises, automobile owners, and others who by means of rates, prices, taxes or insurance are best able to distribute to the public at large the risks and losses which are inevitable in a complex civilization. Rather than leave the loss on the shoulders of the individual plaintiff, who may be ruined by it, the courts have tended to find reasons to shift it to the defendants”, except where there are “limitations upon the power of a defendant to shift the loss to the public * * * [as] where the liability may extend to an unlimited number of unknown persons, and is incapable of being estimated or insured against in advance.”
The majority’s blind acceptance of the notion that Consolidated Edison will be crushed if held liable to the present plaintiff and others like him ignores the possibility that through application to the Public Service Commission Con Ed can seek such reduction of the return on stockholders’ equity (Public Service Law § 66 [16]; cf. Matter of Consolidated Edison Co. v Public Serv. Commn., 74 AD2d 384, appeal dismissed 51 NY2d 877, lv denied 51 NY2d 705) or increase in its rates, or both, as may be necessary to pay the judgments obtained against it. It ignores as well the burden imposed upon the persons physically injured by Con Ed’s gross negligence or, as to those forced to seek welfare assistance because their savings have been wiped out by the injury, the State. Doing so in the name of public policy seems particularly perverse, for what it says, in essence, is the more persons injured through a tort-feasor’s gross negligence,* the less the responsibility for injuries incurred.
I agree that there are situations encompassed by our tort system that require such a result, perverse though it may be, but before granting public utilities absolution beyond that which they already enjoy through the limitation of their liability to acts of gross negligence, I would put the burden upon the utility to establish the necessity for doing so. I am not suggesting that the issue is to be determined by a jury for, as already noted, I do not question that “duty” is a question of law to be determined by the courts. But the law is not without illustrations of preliminary issues involving facts to be determined by a Judge (e.g., competency and privilege of witnesses, Richardson, Evidence § 117 [Prince 10th ed]; Morgan, Evidence § 53 [3d ed]; *409 suppression of evidence, CPL 710.60; Richardson, op. cit. § 550). Nor am I necessarily suggesting that a retrospective determination of how crushing the liability from the 1977 blackout may be, as distinct from a more generalized prospective determination, should govern, although I would not balk at the former if the latter proved impossible of demonstration. All that I am suggesting is that it is Con Ed which claims that its duty does not encompass plaintiff, not because Con Ed was not grossly negligent, but because the effect of that negligence if Con Ed is held liable for it would be to cripple Con Ed as well as the victim’s of the negligence. There simply is no basis other than the majority’s say so for its assumptions (majority opn, at p 405) that the impact of a city-wide deprivation of electric power upon the utility is entitled to greater consideration than the impact upon those injured; that a rational boundary cannot be fixed that will include some (apartment tenants injured in common areas, for example), if not all of the injured; that the consequence of imposing some bystander liability will be more adverse to societal interests than will follow from blindly limiting liability for tort to those with whom the tort-feasor has a contractual relationship. Before we grant Con Ed’s motion to dismiss, therefore, we should require that a rational basis for such assumptions be established.
Con Ed may well be able to do so, but before its motion is granted at the expense of an unknown number of victims who have suffered injuries the extent and effects of which are also unknown, it should be required to establish that the catastrophic probabilities are great enough to warrant the limitation of duty it seeks (cf. Tobin v Grossman, 24 NY2d 609, 620 [Keating, J., dissenting], supra).
I would, therefore, deny the summary judgment motions of both sides and remit to Supreme Court for determination of the preliminary fact issues involved.
Chief Judge Wachtler and Judges Simons, Alexander and Titone concur with Judge Kaye; Judge Meyer dissents and votes to reverse in a separate opinion in which Judge Jasen concurs.
Order affirmed, with costs.

 Nor can I accept the “consciously culpable” distinction which the majority seeks to impose between Con Ed and the employee who failed to “shed load.” If, as Ultramares holds (255 NY 170, at p 193), the employer can be held for its subordinate’s fraud, absent a showing that the subordinate acted out of an interest adverse to the employer, the same should be true of gross negligence.